[No. H011753. Sixth Dist. July 25, 1996.]

A. C. LABEL COMPANY, INC., et al., Plaintiffs and Appellants, v. TRANSAMERICA INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Branson, Fitzgerald & Howard, John R. Campo and Harry A. Griffith for Plaintiffs and Appellants.

Walker & Durham, Walter H. Walker III and Susan Hayes for Defendant and Respondent.

**OPINION**

**MIHARA, J.**—Defendant issued a comprehensive general liability (CGL) insurance policy to plaintiffs which was in effect from May 1981 to May 1982. Plaintiffs purchased a parcel of real property in 1984, and a cleanup and abatement action was brought against them in 1987 for groundwater

contamination on that real property which had begun in 1967. In 1992, defendant refused to defend or indemnify plaintiffs in the cleanup and abatement action. Plaintiffs brought a breach of contract and bad faith action against defendant in 1993 based on defendant's refusal to defend and indemnify. Defendant's demurrer was granted without leave to amend, and judgment was entered in favor of defendant. On appeal, plaintiffs claim that the trial court erred in granting the demurrer because coverage under the CGL policy was "triggered" during the policy period. We disagree and affirm the judgment.

## ANALYSIS

■ "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. . . ." (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317], citations omitted.) The only issue on appeal is "whether the complaint states facts sufficient to constitute a cause of action." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Plaintiffs alleged in their complaint that defendant had breached its contractual duty under the CGL policy to defend plaintiffs against claims potentially covered by the policy. Our task is to decide whether this allegation stated a cause of action.

■ "The duty to defend is much broader than the duty to indemnify. An insurer's duty to defend must be analyzed and determined on the basis of any *potential* liability arising from facts available to the insurer from the complaint or other sources . . . ." (*CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 605 [222 Cal.Rptr. 276].) We look to the allegations of the complaint. Plaintiffs' CGL policy provided that defendant "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence." The policy defined an "occurrence" as "an accident . . . which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." It defined "property damage" as "physical injury to or destruction of tangible property which occurs during the policy period . . . ." ■ Plaintiffs' CGL policy was in effect from May 1981 to May 1982. In 1984, plaintiffs purchased a parcel of real property. In 1987, a cleanup and abatement action was initiated as a consequence of decades of groundwater contamination on that real property. Defendant refused to defend or indemnify plaintiffs in this cleanup and abatement action.

In order to determine whether these allegations stated a cause of action, we must first determine the scope of the coverage which defendant was obligated to provide to plaintiffs under this CGL "occurrence" policy. ■ "California courts have long recognized that *coverage* in the context of a liability insurance policy *is established at the time the complaining party was actually damaged.*" (*Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 669 [42 Cal.Rptr.2d 324, 897 P.2d 1] (hereafter *Montrose*), italics added.) The coverage under such a policy must be construed in accord with "the mutual intention of the parties at the time the contract is formed." (*Montrose, supra,* at p. 666.) While ambiguities are generally resolved in favor of coverage, this rule only protects the "objectively reasonable expectations" of the insured. (*Montrose, supra,* at p. 667.) The nature of a policyholder's "reasonable expectation of coverage" is a question of law. (*Oliver Machinery Co.* v. *United States Fid. & Guar. Co.* (1986) 187 Cal.App.3d 1510, 1518 [232 Cal.Rptr. 691].)

■ CGL policies are third party liability insurance policies which obligate insurers to pay money to third parties to whom their insureds are liable. In contrast to first party insurance policies which obligate an insurer to pay money directly to an insured for a loss sustained by the insured as a result of a particular covered peril, CGL policies cover a broader spectrum of risks because coverage depends not on the cause of the loss but on whether the insured *is liable* for a particular loss. (*Montrose, supra,* 10 Cal.4th at pp. 663-665.) An "occurrence" policy also covers a different spectrum of claims than a "claims made" policy. A "claims made" policy covers claims which are "asserted" against the insured by a third party during the policy period regardless of when the underlying damage occurred. (*Montrose, supra,* at pp. 688-689; *Slater* v. *Lawyers' Mutual Ins. Co.* (1991) 227 Cal.App.3d 1415, 1423 [278 Cal.Rptr. 479].) An "occurrence" policy, on the other hand, does not restrict the period during which a claim may be made. This type of policy covers losses for which the insured is liable so long as the damage "occurs" during the policy period. (*Montrose, supra,* at p. 689.)

■ Coverage questions arising under a CGL occurrence policy must be resolved based on the facts in existence *at the time that the damage occurred.* (*Montrose, supra,* 10 Cal.4th at p. 669.) The facts in existence at the time that the 1981 and 1982 groundwater contamination occurred on the real property herein in question did not trigger coverage under plaintiffs' CGL policy because, although the *damage* allegedly occurred during the policy period, plaintiffs, the insureds, were not, and had not been, associated with the property or the groundwater contamination in any way at the time this damage occurred, and therefore plaintiffs were not *liable* for and could not have been held *liable* for this damage at the time that this damage occurred.

Plaintiffs became connected to the damage only through their 1984 acquisition of the property. Because a CGL occurrence policy only covers the insured's *liability* for damage caused by an occurrence, the fact that plaintiffs were not liable for the damage when it occurred results in the absence of coverage for that damage. This absence of coverage is not a consequence of the third party's delayed *discovery* of the damage or any policy limitation on when the insured or the third party *asserts* its claim. Instead, the absence of coverage in this case is the natural consequence of the fact that CGL occurrence policies cover only the *liability of the insured* during the relevant policy period. As plaintiffs were not *liable* for the damage when it occurred, their liability insurance coverage was inapplicable.

Plaintiffs assert that the California Supreme Court's decision in *Montrose* requires us to conclude that their complaint stated a cause of action. We disagree. In *Montrose*, the issue was whether a third party CGL occurrence policy in effect at the time that damage occurred covered a claim based on that damage even if the damage-producing act occurred prior to the commencement of the policy period. Montrose, the insured, had disposed of toxic waste at various sites over a long period of time. Admiral issued a CGL policy to Montrose for a period *after* Montrose had stopped disposing of toxic waste. A cleanup action was brought against Montrose by a third party for the cost of removing and remediating toxic waste contamination at some of these sites. Admiral claimed that it was not required to defend or indemnify Montrose because the *events which caused* the progressive contamination (Montrose's polluting conduct) occurred *prior to* the policy period. Admiral asserted that the fact that progressive *damage* occurred during the policy period did *not* trigger coverage. (*Montrose, supra*, 10 Cal.4th at pp. 655-663.) The California Supreme Court rejected Admiral's claim that the "loss-in-progress rule" precluded coverage and decided that progressive loss for which an insured was liable which continues through several CGL policy periods triggers potential coverage under all of the policies in effect during those periods. (*Montrose, supra*, at p. 689.) *Montrose* did not involve an insured's postpolicy period acquisition of liability for damage which had occurred during the policy period. Consequently, the holding in *Montrose* did not resolve the issue raised herein.

While we have located no case authority involving similar facts, an analogous situation was dealt with in *Cooper Companies* v. *Transcontinental Ins. Co.* (1995) 31 Cal.App.4th 1094, 1103 [37 Cal.Rptr.2d 508].[1] Cooper had an "occurrence" liability insurance policy from 1982 to 1985. In 1987, Cooper purchased two other companies and acquired their liabilities. Cooper

---

[1]*Cooper* was cited in *Montrose* without disapproval. (*Montrose, supra*, 10 Cal.4th at p. 667.)

asserted that its policy should afford it coverage for damages incurred during the policy period for which these subsequently purchased companies were liable. While the legal issues primarily involved the meaning of the words "hereafter acquired" in the policy language describing the "named insured," the First District Court of Appeal cogently explained why finding coverage would be unreasonable and troubling. If Cooper had acquired the Johns-Manville Corporation (a notorious asbestos manufacturer), it would have created coverage for damage caused by this after-acquired company "even though Cooper and Johns-Manville were strangers at the time the policies were written and Transcontinental had no opportunity to underwrite or receive compensation for the increased risk." (*Cooper Companies, supra,* at pp. 1103-1104.) The First District relied on "the truism that unless coverage has been triggered under these occurrence policies within the policy period, there is no coverage once the policy period has ended." (*Id.* at p. 1107.)

A similar analysis applies here. Liability insurance coverage cannot be created after the fact. The coverage provided by plaintiffs' CGL policy was not triggered during the policy period because plaintiffs had no connection to or nexus with the damage caused by contamination that occurred on the subsequently acquired property during the policy period. The terms of the policy were not ambiguous as to the coverage of the policy: it covered plaintiffs' liability during the policy period. Coverage for plaintiffs' after-acquired liability for the damage caused during the policy period by contamination of this property could not possibly have been within the reasonable mutual contemplation of the parties at the time they entered into the insurance contract. No reasonable policyholder could have believed that a CGL policy issued for a policy period in 1981 and 1982 would provide coverage for a loss which was not a liability of the policyholder at any time prior to 1984. Any expectation that plaintiffs may have had that this liability insurance policy would apply to after-acquired liability with which they had no connection during the policy period was unreasonable as a matter of law and therefore cannot support an interpretation of this policy in favor of coverage.

Plaintiffs' argument that public policy supports extending coverage in such a manner is equally unsupportable. If coverage could be created by after-the-fact transfer of liability to an insured, an insured could contrive to make an insurer responsible for the liability of a *third party* by simply acquiring that liability long after damage attributable to the third party had already occurred simply because of the happenstance that the *insured,* as opposed to the third party, had been covered by a CGL policy at the time of the damage. Such an unlimited extension of coverage would permit a party that was responsible for damage to force the insurer of *another* to "share" that responsibility by simply transfering the party's accrued liability to an

insured. Insurance companies could then be drawn into litigation notwithstanding the fact that they had not insured any of the parties that were liable for the damage when it occurred. The insurer's ability to assess risks would be seriously undermined. Public policy does not permit us to countenance such an injustice.

CONCLUSION

The judgment is affirmed.

Elia, J., concurred.

**PREMO, Acting P. J.**—I dissent.

The question presented by this case is simply stated: for purposes of the duty to defend, does a 1981-1982 comprehensive general liability (CGL) policy cover plaintiff for a 1987 suit alleging 1981-1982 groundwater contamination cleanup liability unknowingly transferred to and assumed by plaintiff via a 1984 purchase of real property?

The majority focuses on plaintiff's purchase of the real property and misconstrues plaintiff's contention into a claim that an insurer should be hooked "after the fact." It then makes new law in pronouncing that, for CGL coverage to be triggered, an insured must be theoretically liable during the policy period. It then gives as the rationale for this new law no more than the reasonable-expectation-of-coverage rule of construction. I disagree with this focus and analysis.

CGL policies insure people, not property. Thus, the focus in a CGL coverage case is on the insured, not the insured's property. Plaintiff's purchase of the real property in question is therefore, at best and if necessary, a secondary part of a coverage analysis.

As in any type of coverage case, the analysis whether coverage exists in this case necessarily begins with the words of the coverage clauses. Here, the clauses are the same standard clauses that were at issue in *Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645 [42 Cal.Rptr.2d 324, 897 P.2d 1]. The court therein settled the meaning of the clauses: "We find no ambiguity in this language; it clearly and explicitly provides that the occurrence of bodily injury or property damage during the policy period is the operative event that triggers coverage." (*Id.* at p. 668.)

It follows that there is no ambiguity in the coverage clauses before us. Thus, there is no reason for the majority to employ a rule of construction to

interpret the clauses. (*Montrose Chemical Corp.* v. *Admiral Ins. Co.*, *supra*, 10 Cal.4th at p. 667.) Since there is no question that there was an occurrence during the policy period in this case, the policy affords plaintiff coverage.

Admittedly, the facts of this case are unusual. At first blush, a result favorable to plaintiff can be taken as imposing ex post facto liability upon defendant. But after closer scrutiny, I am convinced that literal application of the coverage clauses to the facts of this case makes perfectly good sense.

First, plaintiff's policy is a CGL "occurrence policy." It insures for unknown liabilities that may occur even after expiration of the policy. The coverage is essentially open-ended so long as the injury or damage occurs during the policy period. This open-ended coverage is paid for by the higher premiums that go with occurrence-based coverage as distinguished from the limited coverage and lower cost of a CGL "claims made" policy. (*Montrose Chemical Corp.* v. *Admiral Ins. Co.*, *supra*, 10 Cal.4th at p. 689.) In 1981-1982, plaintiff therefore paid defendant a higher premium for the security of open-ended 1981-1982 liability coverage. In accepting the higher premium, defendant accepted more risk—making an educated guess about its exposure at best, falling far short of the mark at worst. (*Id.* at p. 664.) Thus, as between plaintiff and defendant, defendant rather than plaintiff agreed to assume the risk of unusual facts.

Secondly, *Montrose* adopted the multiple-trigger-of-coverage theory to third party claims of continuous or progressively deteriorating damage or injury. This theory holds that "bodily injuries and property damage that are continuous or progressively deteriorating throughout successive policy periods are covered by all policies in effect during those periods." (*Montrose Chemical Corp.* v. *Admiral Ins. Co.*, *supra*, 10 Cal.4th at p. 675.) Given that courts will generally apply equitable considerations to spread the cost among the several policies and insurers (*id.* at p. 687), defendant is in a better position than plaintiff to minimize the impact of the unusual facts.

I would reverse the judgment and remand with instructions to overrule defendant's demurrer and grant leave to answer.

A petition for a rehearing was denied August 16, 1996, and appellants' petition for review by the Supreme Court was denied October 16, 1996. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.