[No. G017832. Fourth Dist., Div. Three. Mar. 31, 1998.]

JAMES PEPPERELL et al., Plaintiffs and Appellants, v.
SCOTTSDALE INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

John K. Saur for Plaintiffs and Appellants.

Haasis, Pope & Correll, Robert V. Closson and Terrell A. Quealy for Defendant and Respondent.

## OPINION

**SONENSHINE, J.**—James Pepperell and Pepperell Enterprises, Inc. (collectively Pepperell, except where individual identification is necessary) appeal from a summary judgment in favor of Scottsdale Insurance Company (Scottsdale) in an action alleging the insurer's breach of its duty to defend and indemnify its insured against third party claims.

### FACTUAL AND PROCEDURAL BACKGROUND

Pepperell Enterprises, Inc., an Orange County developer, designed and built a single-family residence in Emerald Bay, Laguna Beach. Construction was completed in November 1988. Armando Nila purchased the home. During the rainy winter and spring seasons of 1991, severe leakage occurred throughout the residence.

Nila spent more than $300,000 to correct the problems. In November 1992, he sued Pepperell Enterprises, Inc., asserting six causes of action based on alleged design and construction defects, as follows: "a. Defective roof design and construction, including flashing, caulking, weatherproofing and window installation leading to numerous leaks throughout the Residence; [¶] b. Defective painting and plastering throughout the interior and exterior of the Residence; [¶] c. Defective design and construction of the foundation of the Residence resulting in the splitting and cracking of walls, floors, and ceilings throughout the Residence; [¶] d. Defective design, construction and installation of the landscaping and drainage surrounding and contiguous to the Residence resulting in the weakening and undermining of the support and foundation for the Residence, as well as leaking and moisture seepage in the Residence; [¶] e. Defective design, construction and installation of decks and balconies, including flashing, caulking, gutters and drainage leading to numerous leaks in the Residence; and [¶] f. Defective design, construction and installation of retaining walls and backfill leading to loss of support and leaking of the Residence." Nila's complaint alleged the latent and hidden defects "were not discovered . . . until on or about March 8, 1991, when [they] began to manifest themselves to varying degrees." The complaint did not name James Pepperell as a defendant, but contained a standard Doe defendant allegation.[1]

Pepperell tendered its defense to Scottsdale, whose standard comprehensive general liability (CGL) policy was in effect during the construction of

---

[1]Nila's Doe allegation stated, "The true names and capacities, whether individual, corporate, or otherwise of Defendants sued herein as DOES 1 through 100, inclusive, are unknown to Plaintiff who, therefore, sues said Defendants by said fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities when ascertained."

the home, from May 31, 1988, to May 31, 1989. In relevant part, the policy provides, "The Company will pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as damages because of [¶] A. BODILY INJURY or [¶] B. PROPERTY DAMAGE [¶] to which this insurance applies, caused by an Occurrence . . . ." "Occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in BODILY INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED." The policy further defines "property damage" as "(1) physical injury to or destruction of tangible property *which occurs during the policy period*, including the loss of use thereof at any time resulting therefrom, [and] (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an OCCURRENCE during the policy period." (Italics added.)[2]

Scottsdale declined to defend, advising the insured, "Since it is alleged that the defects being claimed did not manifest themselves until on or about March 8, 1991, which was after the expiration of the policy, there is no coverage for this matter and there will be no defense or indemnification forthcoming from Scottsdale Insurance Company." The insurer recommended that Pepperell "report this lawsuit to the carrier who may have insured [you] as of March 8, 1991"—the manifestation date.

Pepperell sued Scottsdale for breach of the insurance contract, negligence and bad faith. After answering, asserting affirmative defenses and conducting discovery, Scottsdale moved for summary judgment. It contended the undisputed facts established Nila's property damage, if any, occurred after the date the policy expired, therefore there was no covered occurrence as a matter of law. It further asserted James Pepperell, as an individual plaintiff, was without standing to sue because he was not a named defendant in the Nila action. In support of its separate statement of undisputed material facts, Scottsdale submitted, inter alia, the Nila complaint, the CGL policy, and Pepperell's responses to discovery. In particular, Scottsdale's special interrogatory asked the insured, "Do you contend that there was an OCCURRENCE of PROPERTY DAMAGE, during the time that [the subject CGL policy] was in effect from May 31, 1988 to May 31, 1989?" Pepperell's response was, "No."

Pepperell's opposition consisted solely of a request for a continuance. The insured argued the motion was an unfair surprise because, based on an

---

[2]The policy definition of "property damage to which this insurance applies" also includes "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an OCCURRENCE during the policy period." Because the parties have not directed us to any "loss of use" issue in this case, we have no occasion to discuss the provision.

earlier stipulation, the parties were to submit an agreed-upon set of facts providing the basis for cross-motions for summary judgment to be filed and heard simultaneously. Pepperell further contended it needed time to obtain the deposition of a "corporate spokesperson" who could attest to Scottsdale's knowledge of extrinsic facts affecting its decision to deny the duty to defend or indemnify.[3] The court did not rule on the continuance because the motion was taken off calendar when Scottsdale failed to file a meet-and-confer statement.

Scottsdale refiled the summary judgment motion; Pepperell's opposition was a virtual carbon copy of the original request for a continuance. There was no memorandum of points and authorities or responding separate statement of material facts.

At the hearing, after considering counsel's further argument as to why a continuance was needed, the trial court denied the request, deciding Pepperell had failed to identify any facts which might exist that would materially affect the outcome.[4] It then granted Scottsdale summary judgment on the ground the policy "requires that property damage occur during the policy period," and "there was no occurrence of property damage during the policy period."

## Discussion

 In this appeal, we must decide a trigger-of-coverage issue. " '[T]rigger of coverage' is a term of convenience used to describe that which, under the specific terms of an insurance policy, must happen in the policy period in order for the *potential* of coverage to arise. The issue is largely one of time—what must take place *within the policy's effective dates* for the potential of coverage to be 'triggered'?" (*Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 655, fn. 2 [42 Cal.Rptr.2d 324, 913 P.2d 878], original italics (*Montrose II*).)

 We must determine which of two triggers applies: the "manifestation of loss" or the "continuous injury" trigger. Scottsdale argues the trial

---

[3]"[F]acts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy. [Citation.] This is so because current pleading rules liberally allow amendment; the third party plaintiff cannot be the arbiter of coverage. [Citation.]" (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 296 [24 Cal.Rptr.2d 467, 861 P.2d 1153].)

[4]Code of Civil Procedure Section 437c, subdivision (h) provides, "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just."

All further statutory references are to the Code of Civil Procedure.

court properly utilized the former trigger; Pepperell contends the latter was apt. Both parties agree *Montrose II* controls, Scottsdale contending the case mandates affirmance, Pepperell arguing it requires reversal. As we will explain, in light of the terms of the standard occurrence-based CGL policy, the allegations of the Nila complaint regarding the construction defects and the continuing or progressive damage caused by those defects, the "continuous injury" trigger of coverage must be applied as a matter of law. Under that standard, Scottsdale was not entitled to summary judgment.

## I

In *Montrose II*, the court, analyzing a series of CGL policies, began by stating the following established rules of interpretation which guide our analysis here: "Insurance policies are contracts and, therefore, are governed in the first instance by the rules of construction applicable to contracts. . . . [T]he mutual intention of the parties at the time the contract is formed governs its interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' controls judicial interpretation unless 'used by the parties in a technical sense, or unless a special meaning is given to them by usage.' [Citation.] If the meaning a layperson would ascribe to the language of a contract of insurance is clear and unambiguous, a court will apply that meaning. [Citations.]" (*Montrose II, supra,* 10 Cal.4th at pp. 666-667.)

The *Montrose II* insurance policies, *identical in every material respect to the policy here*, obligated the insurer to " 'pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury, or . . . property damage to which this insurance applies, caused by an occurrence. . . .' " (*Montrose II, supra,* 10 Cal.4th at p. 656.) The definition of "occurrence" was " 'an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.' " (*Ibid.*) "Property damage" was defined as " '(1) physical injury to or destruction of tangible property *which occurs during the policy period*, including the loss of use thereof at any time resulting thereform [*sic*] . . . .' " (*Montrose II, supra,* 10 Cal.4th at p. 668, original italics.)

The *Montrose II* court found "no ambiguity in this language; it clearly and explicitly provides that the occurrence of bodily injury or property damage during the policy period is the operative event that triggers coverage." (*Montrose II, supra,* 10 Cal.4th at p. 668.) We agree and so do the parties.

But Scottsdale argues there was no operative event triggering coverage because there was no property damage during the policy period: The insurance contract ended May 31, 1989; Nila's house did not leak until March

1991. The argument rests on the invalid proposition that the damage must be *manifested* within the policy period. The *Montrose II* court definitively rejected that proposition.

Explaining the issue of trigger of coverage in continuous injury or progressive damage cases, the court identified four types of trigger, only two of which are pertinent to our discussion—the manifestation trigger and the continuous injury trigger. Under the former, the insurer on the risk "at the time appreciable property damage first becomes manifest [is] solely responsible for indemnification to the insured. For purposes of applying the rule, the time at which the property damage becomes manifest . . . is 'that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his [or her] notification duty under the policy had been triggered.' [Citation.]" (*Montrose II, supra*, 10 Cal.4th at p. 674.) The court described a number of compelling reasons for application of the manifestation theory in the *first party insurance* context. (*Id.* at pp. 674-675.)[5]

With regard to the continuous injury trigger, on the other hand, the *Montrose II* court explained, "The timing of the accident, event, or conditions *causing* the bodily injury or property damage, e.g., an insured's negligent act, is largely immaterial to establishing coverage; it can occur before or during the policy period. Neither is the date of discovery of the damage or injury controlling: it might or might not be contemporaneous with the causal event. It is only the *effect*—the occurrence of bodily injury or property damage during the policy period, resulting from a sudden accidental event or the 'continuous or repeated exposure to conditions'—that triggers potential liability coverage." (*Montrose II, supra,* 10 Cal.4th at p. 675.) The court also observed, "[T]he drafters of the standard occurrence-based CGL policy, and the experts advising the industry regarding its interpretation when formulated in 1966, contemplated that the policy would afford liability coverage for all property damage or injury occurring during the policy period resulting from an accident, or from injurious exposure to conditions. Nothing in the policy language purports to exclude damage or injury of a continuous or progressively deteriorating nature, as long as it occurs during the policy period. Nor is there any basis for inferring than an *insured's* understanding and reasonable expectations regarding the scope of coverage for damage or injury occasioned during the effective period of an occurrence-based CGL

---

[5]The *Montrose II* court went to great lengths to distinguish between third party liability insurance—such as that involved here—and first party property insurance, such as a standarized homeowners policy. (*Montrose II, supra,* 10 Cal.4th at pp. 663-666.) We refer the parties to that extensive discussion. We will not summarize it here, other than to note the court explains numerous significant considerations bearing upon proper analysis of the trigger-of-coverage issue.

policy would have been otherwise." (*Id.* at p. 673, original italics, fn. omitted.)

The court then discussed a number of cases applying the "continuing injury theory of loss allocation in the context of progressive property damage." (*Montrose II, supra,* 10 Cal.4th at p. 677.) Notably, it cited *Gruol Construction Co.* v. *Insurance Co. of North America* (1974) 11 Wn.App. 632 [524 P.2d 427], "a third party construction defect suit for recovery of dry rot damage" caused by "[t]he contractor's improper piling of dirt against the building." (*Montrose II, supra,* 10 Cal.4th at p. 677.) The *Montrose II* court observed, "The [*Gruol*] court held that the injury was a continuous process which began at the time of the negligent construction and continued through the manifestation of the dry rot damage, ' "even though there [was] a lapse of time between the initial negligent act and the occurrence of the ultimate damage . . . ." ' " (*Id.* at pp. 677-678.)

The *Montrose II* court next referenced *California Union Ins. Co.* v. *Landmark Ins. Co.* (1983) 145 Cal.App.3d 462 [193 Cal.Rptr. 461], the first reported decision in California "to discuss the triggering of potential coverage under third party liability insurance policies, where continuous or progressively deteriorating property damage was involved." (*Montrose II, supra,* 10 Cal.4th at p. 678.) At issue in that case were the obligations of successive insurers, Landmark and Cal Union, for damage to adjoining property caused by a gradual leak of water from a swimming pool. The actual source of the leakage damage was not discovered until an inspection of the pool "at a point in time following expiration of the Landmark policy and during the term of the successive Cal Union policy." (*Ibid.*) The *California Union* court found separate manifestations of damage at separate points in time were not separate occurrences under the policy definitions, but were, rather, the result of a " 'continuous active force at work' during the eighteen months between the time of the 'wrongful act' (the crack in the pool that first gave rise to the water damage to the adjoining property) and the manifestation of the actual loss. [Citation.]" (*Id.* at p. 679.) "[G]iven the continuing and progressively deteriorating nature of the pool leakage damage," there was but one occurrence. (*Ibid.*)

In concluding the continuous injury trigger of coverage should be applied to third party claims of continuous or progressively deteriorating damage or injury alleged to have occurred within the relevant policy period, the *Montrose II* court cited an array of consistent conclusions from "the highest courts of other states." (*Montrose II, supra,* 10 Cal.4th at pp. 686-687, fn. 22.) In a nutshell, the rule to be gleaned from *Montrose II* and the authorities contributing to its analysis is that continuing or progressive property damage is deemed to occur over the entire process of the continuing injury.

## II

■ Having laid the legal groundwork for our analysis, we turn to the record below, with the following rules in mind: " 'Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court. [Citations.] First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. [Citations.] [¶] [Second], we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in [the] movant's favor. . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue.' " (*Stewart* v. *Telex Communications, Inc.* (1991) 1 Cal.App.4th 190, 192 [1 Cal.Rptr.2d 669].) A defendant moving for summary judgment "has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (§ 437c, subd. (o)(2).) If the moving defendant does not meet the burden, the plaintiff need not make any showing at all.

■ Did Scottsdale eliminate triable issues of fact raised by the Nila complaint with regard to property damage being a process which began at the time of construction and continued through the manifestation of leakage and the ultimate devastation to the residence? Clearly not.

The insurer's duty to defend must be measured first against the allegations of Nila's complaint. ■ The duty to defend is broader than the duty to indemnify: "[T]he insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy. [Citation.]" (*Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th 287, 299, original italics.)

■ Nila's complaint alleged defective design and construction involving virtually every part of the home—inter alia, a defective foundation which resulted in "splitting and cracking of walls, floors, and ceilings throughout the Residence"; a defective landscaping and drainage system "weakening and undermining . . . the support and foundation for the Residence, as well as leaking and moisture seepage"; a defective roof design and construction

leading to numerous leaks throughout the home; defectively designed, constructed and installed retaining walls and backfill "leading to loss of support and leaking of the Residence"; not to mention smaller details such as flashing, caulking, weatherproofing, window installation, painting and plastering. The complaint further alleged the latent and hidden defects "were not discovered . . . until on or about March 8, 1991, when [they] began to manifest themselves to varying degrees." The clear implication of the complaint is that there existed—at least *potentially*—a covered event, i.e., a continuing and progressively deteriorating process which began with defective design and construction admittedly *within* the pertinent policy period.[6] That being the case, unless there are exculpatory facts, such as policy exclusions on the duty to defend or the ultimate issue of coverage, or meritorious affirmative defenses to coverage which might be available to the insurer (facts which do not affirmatively appear in the record before us), Scottsdale had a duty to defend Pepperell.[7]

## III

James Pepperell contends the court erroneously determined he was without standing to sue. We find no record of such a determination. The issue was raised by Scottsdale as a ground for summary judgment, but the separate statement does not establish an evidentiary basis for the contention, it was not orally argued, and the court makes no reference to it in the order for entry of summary judgment or the judgment itself. Apparently no one took it seriously. We decline to issue an advisory opinion.

---

[6]We devote little time to Scottsdale's assertion Pepperell should be bound by a purported admission in discovery that there was no occurrence of property damage during the policy period. It would not serve law or equity, justice or fairness, for us to construe the special interrogatory and response to represent a concession of that nature.

[7]Because Scottsdale did not make its prima facie showing of entitlement to summary judgment, Pepperell's failure to file opposition papers, including a responding separate statement, is irrelevant. It is true the trial court has discretion, under section 437c, subdivision (b), to grant a summary judgment motion when the opposing party fails to comply with the statutory requirement of a separate statement. Scottsdale, perhaps mindful of this court's opinion in *Kulesa* v. *Castleberry* (1996) 47 Cal.App.4th 103 [54 Cal.Rptr.2d 669], does not argue we should affirm solely on the basis of Pepperell's procedural fault. We would not do so in any event. As noted in *Kulesa*, " ' "[t]he sanction of peremptory dismissal, without consideration of the merits, is fundamentally unjust unless the conduct of a plaintiff is such that the delinquency interferes with the court's mission of seeking truth and justice." ' [Citation.]" (*Id.* at p. 114.) And where, as here, " 'the motion for summary judgment involves relatively simple issues and only a few pages of evidentiary material, the statement does not have great importance.' [Citation.]" (*Id.* at pp. 114-115.) Moreover, ". . . a summary judgment cannot be affirmed where there are no circumstances—apart from the lack of an opposing separate statement—giving the trial court *reason* to grant the motion and the order is 'contrary to the appropriate legal principles and policies.' [Citation.]" (*Id.* at p. 115, original italics.)

CONCLUSION

In closing, we return to the *Montrose II* decision, in which the court succinctly set forth its holding: "Stated in the insurance industry's parlance, we conclude the 'continuous injury' trigger of coverage should be adopted for third party liability insurance cases involving continuous or progressively deteriorating losses. In this case, because the potential of coverage arose under Admiral's policies, so too did its duty to defend Montrose in the underlying lawsuits." (*Montrose II, supra*, 10 Cal.4th at p. 655, fn. omitted.) Further, following that court's lead, we "do not . . . purport to reach the merits of whether coverage under [Scottsdale's policy] for the injury and damage alleged in the . . . underlying lawsuit[] against [Pepperell] can ultimately be established. [Citation.] Whether the damages and injuries alleged were in fact 'continuous' is itself a matter for final determination by the trier of fact. [Citations.]" (*Montrose II, supra*, 10 Cal.4th at p. 694.)

The judgment is reversed. The case is remanded for further proceedings consistent with the views expressed here. Pepperell shall recover costs on appeal.

Crosby, Acting P. J., and Bedsworth, J., concurred.

A petition for a rehearing was denied April 23, 1998, and respondent's petition for review by the Supreme Court was denied June 17, 1998. Kennard, J., Baxter, J., and Brown, J., were of the opinion that the petition should be granted.