[No. H022046. Sixth Dist. May 22, 2002.]

CENTURY INDEMNITY COMPANY et al., Plaintiffs and Appellants, v. ROY HEARREAN et al., Defendants and Respondents.

**COUNSEL**

Wolkin & Timpaine, Brandt L. Wolkin, Thomas A. Ostly and Emily Anne Smith for Plaintiffs and Appellants.

Lewis, D'Amato, Brisbois & Bisgaard and Roger S. Raphael for Defendants and Respondents.

## Opinion

**WUNDERLICH, J.**—In this declaratory relief action, plaintiffs Century Indemnity Company and Bankers Standard Insurance Company (collectively Century) sought a declaration from the trial court that it had no duty to indemnify a third party claimant, the purchaser of a hotel that was extensively expanded and remodeled by defendant insureds, Roy Hearrean and State Wide Investors, Inc. Both Century and the insureds filed cross-motions for summary judgment, and the trial court granted summary judgment in favor of defendant insureds. On appeal from the ensuing judgment, Century asserts that because the third party claimant did not suffer any injury or damage during the policy periods, as a matter of law, there was no coverage.

## Facts

The following facts come from the parties' stipulation of facts in support of cross-motions for summary judgment.

"The two insureds in this case are an individual, Roy Hearrean (Hearrean), and a company called State Wide Investors, Inc. ('State Wide'), of which Mr. Hearrean is the President. (Hearrean and State Wide are collectively referred to as the 'Insureds.') [¶] . . . Between 1988 and 1993, Bankers Standard Insurance Company . . . and Insurance Company of North America . . . issued several general liability polices to either one or both of the Insureds. Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, is now responsible for those policies originally issued by INA. . . . [¶] . . . [¶] . . . The Insuring Agreement of all of the Policies provides as follows: [¶] 'We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.' [All policies also provided that the insurance applies only to 'bodily injury' or 'property damage' that occurs during the policy period.] [¶] . . . [¶] . . . The Definitions section in all of the Policies provides as follows: [¶] 'Property damage' means: [¶] a. Physical injury to tangible property, including all resulting loss of use of that property [. . .] or [¶] b. Loss of use of tangible property that is not physically injured. [. . .] [¶] 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.'"

"On June 10, 1988, Hearrean purchased a hotel in Santa Clara formerly known as the Ramada Hotel, and currently known as the Biltmore Hotel and

Suites ('the Hotel'). [¶] . . . From 1989 through August 1990, Hearrean and State Wide constructed improvements to the Hotel, including the addition of a nine-story 'tower,' which were completed in August of 1990. [¶] . . . On January 15, 1991, Hearrean transferred the Hotel to Union Federal Savings Bank ('Union Bank') via a deed in lieu of foreclosure. [¶] . . . On June 5, 1992, Union Bank sold the Hotel to Kanwell Lodging Group, Inc. ('Kanwell'). [¶] . . . Kanwell sold the Hotel to Kang Family Partners (the current owner and operator of the Hotel) on February 18, 1994." (Fn. omitted.)

"On February 9, 1996, Kang Family Partners sued Hearrean and State Wide in a lawsuit entitled *Kang Family Partners, L.P., vs. Ray Hearrean Construction*, Case No. CV755848, in the County of Santa Clara (the 'Underlying Action'). The Underlying Action alleges that Hearrean, State Wide and others negligently and defectively constructed improvements at the Hotel, thereby causing injury to Kang Family Partners. . . . [¶] . . . The Underlying Action contained claims for 'property damage' as defined in each of the Policies. Such damage took place both during and after the policy periods. [¶] . . . Hearrean and State Wide tendered the Underlying Action to the Insurers. [¶] . . . The Insurers, among others, provided a defense to Hearrean and State Wide under a reservation of rights to dispute coverage. [¶] . . . The Insurers filed this declaratory relief action disputing coverage on June 25, 1998. [¶] . . . On March 2, 1999, the Insurers paid $100,000 to settle the Underlying Action on behalf of Hearrean and State Wide. [¶] . . . Neither Hearrean nor State Wide contributed to the settlement."

On June 1, 2000, Century filed a motion for summary judgment and the insureds filed a cross-motion for summary judgment. At the hearing on the two motions, the trial court granted the insureds' cross-motion and denied Century's motion. This appeal followed.

## STANDARD OF REVIEW

" ' "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court. [Citations.] First, we identify the issues framed by the pleadings since it is these allegations to which the motion *must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading.* [Citations.] [¶] [Second], we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in [the] movant's favor. . . . [¶] When a

summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." ' [Citation.]" (*Pepperell v. Scottsdale Ins. Co.* (1998) 62 Cal.App.4th 1045, 1054 [73 Cal.Rptr.2d 164] (*Pepperell*).)

## Discussion

Century contends the policyholders are not entitled to coverage as a matter of law because the third party claimant, the Kang Family Partners, did not purchase the hotel until after the expiration date of all five policies. Century explains, "[t]he terms of Century Indemnity's policies clearly preclude coverage for the Underlying Action. . . . [¶] In order to come within the scope of the insuring agreements, and thus to obtain coverage, the Policyholders must be liable to the claimant for injuries that the claimant suffered during the policy period. However, the claimant in this case, Kang Family Partners, did not purchase the Hotel until after the expiration of all five of the Policies. Thus, the claimant did not (and could not) [*sic*] have suffered any injuries during any of the Policy periods, and no coverage under the Policies attaches."

Since Century argues that the "policies clearly preclude coverage," we shall begin by examining those policies. The first and second, issued by Bankers Standard Insurance Company, insured State Wide from April 1, 1988, to April 1, 1989, and from April 1, 1989, to April 1, 1990. The third, also issued by Bankers Standard, insured Hearrean and State Wide from April 1, 1990, to April 1, 1991. The fourth and fifth, issued by Century's predecessor, Insurance Company of North America, insured Hearrean and State Wide from April 1, 1991, to April 1, 1992, and from April 1, 1992, to April 1, 1993.

The insuring agreements of all five of these policies stated, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." In addition, the first and second policies provided: "*This insurance applies only to* 'bodily injury' and '*property damage' which occurs during the policy period.*" The three remaining policies contained a similar provision: "*This insurance applies to* 'bodily injury' and '*property damage' only if:* . . . [¶] *The* 'bodily injury' or '*property damage' occurs during the policy period.*" The definitions section of all policies provided: " '*Property damage' means:* [¶] *a. Physical injury to tangible property*, including all resulting loss of use of that property [. . .] or [¶] [b.] Loss of use of tangible property that is not physically injured. [. . .] [¶] 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.' " (Italics added.)

Century asserts that under "occurrence-based liability" policies, as here, "coverage is determined based upon the facts that existed at the time the complaining party was actually injured." (Italics omitted.) The Kang Family Partnership was not injured, Century argues, until after it purchased the hotel in 1994, which was after each of the five Century and Bankers Standard policies had expired. Consequently, Century maintains there can be no coverage.

For this strict construction of insurance law, Century relies on this court's opinions in *A. C. Label Co. v. Transamerica Ins. Co.* (1996) 48 Cal.App.4th 1188 [56 Cal.Rptr.2d 207] (*A. C. Label*) and *FMC Corp. v. Plaisted & Companies* (1998) 61 Cal.App.4th 1132 [72 Cal.Rptr.2d 467] (*FMC Corp.*), and the California Supreme Court opinion in *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645 [42 Cal.Rptr.2d 324, 913 P.2d 878] (*Montrose*).

In *A. C. Label*, we stated, "In order to determine whether these allegations stated a cause of action, we must first determine the scope of the coverage which [plaintiff] was obligated to provide to [defendants] under this CGL 'occurrence' policy. 'California courts have long recognized that *coverage* in the context of a liability insurance policy *is established at the time the complaining party was actually damaged.*' [Citation.] The coverage under such a policy must be construed in accord with 'the mutual intention of the parties at the time the contract is formed.' [Citation.] While ambiguities are generally resolved in favor of coverage, this rule only protects the 'objectively reasonable expectations' of the insured. [Citation.] The nature of a policyholder's 'reasonable expectation of coverage' is a question of law. [Citation.]" (*A. C. Label, supra,* 48 Cal.App.4th at p. 1192, original italics.)

We further explained, "CGL policies are third party liability insurance policies which obligate insurers to pay money to third parties to whom their insureds are liable. In contrast to first party insurance policies which obligate an insurer to pay money directly to an insured for a loss sustained by the insured as a result of a particular covered peril, CGL policies cover a broader spectrum of risks because coverage depends not on the cause of the loss but on whether the insured *is liable* for a particular loss. [Citation.] An 'occurrence' policy also covers a different spectrum of claims than a 'claims made' policy. A 'claims made' policy covers claims which are 'asserted' against the insured by a third party during the policy period regardless of when the underlying damage occurred. [Citations.] An 'occurrence' policy, on the other hand, does not restrict the period during which a claim may be made. This type of policy covers losses for which the insured is liable so long as the damage 'occurs' during the policy period. [Citation.] [¶] Coverage

questions arising under a CGL occurrence policy must be resolved based on the facts in existence *at the time that the damage occurred.* [Citation.]" (*A. C. Label, supra,* 48 Cal.App.4th at p. 1192, original italics.)

In the underlying action, Kang Family Partners alleged that property damage to the hotel occurred during the period the policies were in force. Specifically, they alleged that Hearrean, State Wide and various subcontractors negligently designed and constructed improvements at the hotel, causing property damage that included leaking windows and roofs and cracked exterior stucco. The plaintiffs further alleged that due to the concealed nature of the deficiencies, those defects were not apparent by reasonable inspection within three years prior to the filing of their complaint.

In the parties' stipulated facts, Century admitted that *"The Underlying Action contains claims for 'property damage' as defined in each of the Policies. Such damage took place* both *during* and after *the policy periods."* Nevertheless, Century maintains that it owes no duty of indemnification to its insureds—Hearrean and State Wide—under the policies because the third party complainant—the Kang Family Partners—was not injured during the policy period. We disagree. "The clear implication of the complaint is that there existed—at least *potentially*—a covered event, i.e., a continuing and progressively deteriorating process which began with defective design and construction . . . *within* the pertinent policy period." (*Pepperell, supra,* 62 Cal.App.4th at p. 1055, original italics, fn. omitted.)

" '[T]he drafters of the standard occurrence-based CGL policy, and the experts advising the industry regarding its interpretation when formulated in 1966, contemplated that the policy would afford liability coverage for all property damage or injury occurring during the policy period resulting from an accident, or from injurious exposure to conditions. Nothing in the policy language purports to exclude damage or injury of a continuous or progressively deteriorating nature, as long as it occurs during the policy period. Nor is there any basis for inferring than [*sic*] an *insured's* understanding and reasonable expectations regarding the scope of coverage for damage or injury occasioned during the effective period of an occurrence-based CGL policy would have been otherwise.' [Citation.]" (*Pepperell, supra,* 62 Cal.App.4th at pp. 1052-1053, original italics.)

Century states, "if we analyze coverage at the time the Policies were in place (the only time coverage can be available), we find that the claimant had not yet suffered any injury for which the insured could be held liable, because, the claimant had not yet purchased the Hotel. Thus, there can be no coverage under the third-party liability Policies provided by the Insurers."

However, "if we analyze coverage at the time the Policies were in place," we see that the insureds' hotel suffered "property damage," as that term is defined in each of the policies, during the policy periods. As the court explained in *Garriott Crop Dusting Co. v. Superior Court* (1990) 221 Cal.App.3d 783, 791 [270 Cal.Rptr. 678] (*Garriott*), a case the trial court found directly on point, "The question raised by the policy language is not when the City [the current property owner] was damaged; it is, instead, when the property now owned by the City was damaged. USAU [the insurer] has not shown that the damage for which recovery is sought did not occur while the . . . policies were in force." (*Id.* at p. 791.)

"Here the insured, Garriott, purchased insurance from USAU to cover its liability arising from property damage during the policy periods. Garriott is now being sued for property damage (physical injury to tangible property) which may have commenced during one of the last two USAU policy periods—precisely what the policies say they cover. Use of the *Remmer*[1] rule to impose a prerequisite to coverage not expressed in the policies (i.e., that the eventual claimant had to own the damaged property during the policy period) would be contrary to every fundamental rule of insurance policy construction." (*Garriott, supra,* 221 Cal.App.3d at p. 795.)

Century complains that the *Garriott* analysis is flawed[2] and that the two cases decided by this court, *A. C. Label* and *FMC Corp.* a First District case,

---

[1] *Remmer v. Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84 [295 P.2d 19, 57 A.L.R.2d 1379].

[2] Century claimed in its opening brief that "several persuasive out-of-state cases" had rejected the *Garriott* analysis, and it cited two such cases—*Browder v. U.S. Fidelity & Guar. Co.* (Colo. 1995) 893 P.2d 132, and *Hoppy's Oil Service, Inc. v. INA* (D.Mass. 1992) 783 F.Supp. 1505. In the second of those two cases, the federal court construed Massachusetts law in an area where the "Massachusetts Supreme Judicial Court has not yet had occasion to consider this precise issue." (*Hoppy's Oil Service, Inc. v. INA, supra,* 783 F.Supp. at p. 1508.) The following year, the Massachusetts Supreme Judicial Court was presented with that "occasion." It soundly rejected the *Hoppy's Oil Services, Inc. v. INA* analysis and specifically adopted the *Garriott* analysis. In *Trustees of Tufts University v. Commercial Union Insurance Company* (1993) 415 Mass. 844 [616 N.E.2d 68], the Massachusetts Supreme Court stated, "The insurers argue that the proper inquiry under these policies is not whether property damage occurred during the policy period, but whether the entity making the claim sustained harm during the policy period. [*Hoppy's Oil Service., Inc. v. INA, supra,* 783 F.Supp. at p. 1508]. Thus, they argue that the judge was correct in ruling that, since Jacksonville did not acquire the property until 1977, it could not have sustained harm until after the last policy period in 1975. We disagree with this interpretation of the policies. The policy language does not require that Jacksonville have a property interest in the contaminated property during the policy period, but only that the property damage itself occur during that time. Had the insurers intended to exclude coverage whenever the underlying plaintiff did not own the property at the time of the occurrence, the insurers could have expressed such an exclusion. See *Garriott[, supra,]* 221 Cal.App.3d [at p. 791] . . . . Even assuming that the policies are susceptible to the interpretation of the insurers, where 'there are two rational interpretations of

*Tosco Corp. v. General Ins. Co.* (2000) 85 Cal.App.4th 1016 [102 Cal.Rptr.2d 657], and the California Supreme Court case *Montrose, supra,* 10 Cal.4th 645, are in direct conflict. We disagree. *Garriott* was correctly decided, and the remaining cases are distinguishable.

In *A. C. Label,* the insurance company was not liable for damages because the ground water contamination occurred before the insureds acquired the property in 1984, *after* the expiration of the policy, which covered the period 1981 to 1982. (*A. C. Label, supra,* 48 Cal.App.4th at pp. 1190, 1194.) At the time the damage occurred, the insureds were not and had not been associated with the property or the groundwater contamination. Therefore, they could not be found liable for the damage when it occurred. Because a comprehensive general liability occurrence policy only covers the insureds for liability for damage caused by an occurrence, the fact that the insureds were not liable for the damage when it occurred resulted in the absence of coverage. (*Id.* at pp. 1191-1192.) Here, in contrast, the insureds, Hearrean and State Wide, were associated with the property at the time the policies were in force, and the property damage occurred during the same period.

In *FMC Corp.,* FMC's liability was created by the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), "10 years after the last London policy period relevant to the issues before us. In no case would, or could, FMC have been declared liable under CERCLA *at the time damage occurred within the policy period,* because at that time CERCLA did not exist. . . . [¶] . . . [¶] We consider such a showing of a contemporaneous factual predicate essential to the kind of coverage for statutorily expanded risk . . . . For this reason we shall conclude, as we concluded in *A. C. Label,* that coverage for liability under subsequently enacted statutes was not triggered in policy periods in which a sufficient factual nexus could not be shown." (*FMC Corp., supra,* 61 Cal.App.4th at p. 1154, original italics.)

In *Tosco Corp. v. General Ins. Co., supra,* 85 Cal.App.4th 1016, the First District Court of Appeal affirmed summary judgments entered in favor of three insurers on the authority of this court's opinion in *A. C. Label.* The First District agreed with this court that a comprehensive general liability

policy language, the insured is entitled to the benefit of the one that is more favorable to it.' [Citation.]" (*Trustees of Tufts University v. Commercial Union Insurance Company, supra,* 415 Mass. at pp. 848-849 [616 N.E.2d at p. 72].) The insureds point out that other states also follow the *Garriott* analysis, including Illinois (see *Great Lakes Dredge & Dock Co. v. Commercial Union* (N.D.Ill. 1999) 57 F.Supp.2d 525, 534, affirmed in part and vacated in part by *Great Lakes Dredge & Dock Co. v. City of Chicago* (7th Cir. 2001) 260 F.3d 789) and New York (see *Burt Rigid Box Inc. v. Travelers Property Cas.* (W.D.N.Y. 2001) 126 F.Supp.2d 596). We agree that there is a split among out-of-state authority.

insurer cannot be required to defend or indemnify an insured with respect to liabilities arising from property that the insured did not own during the policy period. The instant case, however, is distinguishable, as the insureds, Hearrean and State Wide, did own the property during the policy period, and property damage within the meaning of the policies occurred during that time.

Finally, in *Montrose*, a landmark case involving the disposal of hazardous waste causing damage both before and during the periods covered by the insurer's policies, the California Supreme Court adopted the " 'continuous injury' trigger of coverage . . . for third party liability insurance cases involving continuous or progressively deteriorating losses." (*Montrose, supra*, 10 Cal.4th at p. 655.) "In the *third party* liability insurance context, 'trigger of coverage' has been used by insureds and insurers alike to denote the circumstances that activate the insurer's defense and indemnity obligations under the policy." (*Ibid.*, fn. 2, original italics.)

In our case, the trigger of coverage, the continuous and progressive injury to the hotel property caused by defective design and construction, occurred during the policy period and activated Century's defense and indemnity obligations. To require the claim of the third party, Kang Family Partners, to arise during the policy period, "would unduly transform [an occurrence-based CGL policy] into a 'claims made' policy. . . . The insurance industry's introduction of 'claims made' policies into the area of comprehensive liability insurance itself attests to the industry's understanding that the standard occurrence-based CGL policy provides coverage for injury or damage that may not be discovered or manifested until after expiration of the policy period." (*Montrose, supra*, 10 Cal.4th at pp. 688-689.)

## DISPOSITION

The judgment is affirmed. Costs on appeal to Hearrean and State Wide.

Premo, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied June 17, 2002, and appellants' petition for review by the Supreme Court was denied August 14, 2002.