**In re K F DAIRIES, INC. & AFFILIATES, Debtors.**

**K F Dairies, Inc. & Affiliates, Appellants,**

**v.**

**Fireman's Fund Insurance Co., Appellee.**

**No. 97–55941.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 1999

Submission Vacated April 13, 1999

Question Certified to California Supreme Court on June 14, 1999

Certified Question Denied July 28, 1999

Matter Returned to Panel on Dec. 2, 1999

Resubmitted Jan. 5, 2000

Filed Aug. 25, 2000

David R. Scheidemantle (argued) and Aaron P. Allan, Proskauer Rose, Los Angeles, CA, for appellants.

Patricia M. Wilson and Melinda Ebelhar (argued), Caron, McCormick, Constants & Goldberg, Glendale, CA, for appellee.

Before: PREGERSON, BEEZER, and HAWKINS, Circuit Judges.

Opinion by Judge MICHAEL DALY HAWKINS; Dissent by Judge BEEZER.

MICHAEL DALY HAWKINS, Circuit Judge:

K F Dairies, Inc. and Affiliates ("KF Dairies") appeal the district court's reversal of the bankruptcy court's $1,142,783

judgment against Fireman's Fund Insurance Company ("Fireman's"). The bankruptcy court concluded that Fireman's should not have refused to defend KF Dairies against the State of California's claim in KF Dairies's bankruptcy proceedings for the costs of abatement and cleanup of environmental contamination at sites owned by KF Dairies and for which KF Dairies was strictly liable under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"). The district court reversed, holding that Fireman's had no duty to defend KF Dairies as a matter of law since KF Dairies acquired the sites (and therefore the CERCLA liability) after its policy with Fireman's had expired. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

■ The facts of the case are well known to the parties and can be found in our Order Certifying a Question to the California Supreme Court, *see K F Dairies, Inc. v. Fireman's Fund Ins. Co.*, 179 F.3d 1226 (9th Cir.1999); we need not repeat them here. We review de novo the district court's grant of summary judgment and interpretation of an insurance contract. *See Stanford Ranch, Inc. v. Maryland Casualty Co.*, 89 F.3d 618, 624 (9th Cir.1996).

## I.

One question of law controls the outcome of this case. As this question involves a construction of state law on which apparently contradictory state court decisions had been rendered, on June 14, 1999, we certified the following question to the California Supreme Court:

Where the state seeks recovery for damage to state-owned groundwater contained within certain property, does the property owner's comprehensive general liability policy provide coverage if the damage occurred within the policy period, but the insured purchased the prop-

erty after the policy period (although before the state made its claim)?

*K F Dairies*, 179 F.3d at 1227.[1] The California Supreme Court, without explanation, denied our request for certification.[2] Accordingly, we must now answer the question, and we do so in the affirmative.

■ Our decision is solely guided by California law as we believe the California Supreme Court would apply it. *See Chemstar, Inc. v. Liberty Mut. Ins. Co.*, 41 F.3d 429, 432 (9th Cir.1994) ("The panel applies California law as it believes the California Supreme Court would apply it."). In conducting our analysis, state appellate court decisions are persuasive authority, but we are not bound by them if "we believe[ ] that the California Supreme Court would decide otherwise." *Id.; see also Miller v. County of Santa Cruz*, 39 F.3d 1030, 1036 n. 5 (9th Cir.1994) ("A state appellate court's announcement of a rule of law is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.") (internal quotations omitted); *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d 373, 378 (9th Cir.1997) (citing *Chemstar* and *Miller*).

Two California Court of Appeal decisions answer the certified question in the negative. That is, they hold that a property owner's general liability policy does not provide coverage if the damage occurred within the policy period, but the insured purchased the property after the policy period had expired.

In *A.C. Label Co. v. Transamerica Ins. Co.*, 48 Cal.App.4th 1188, 56 Cal.Rptr.2d 207 (1996), the insured purchased a comprehensive general liability ("CGL") insurance policy from the insurer, Transamerica Insurance Company. The effective coverage period of the policy was from May

---

1. The question was certified pursuant to Rule 29.5 of the California Rules of Court.

2. The Clerk of this court received notice of the denial on December 2, 1999.

1981 through May 1982. In 1984, A.C. Label purchased real property. In 1987, a cleanup and abatement action for the purchased property was brought against A.C. Label for groundwater contamination that had begun in 1967. Transamerica refused to defend or indemnify A.C. Label in the cleanup and abatement action, and A.C. Label subsequently sued for breach of contract. *See id.* at 1191, 56 Cal.Rptr.2d at 208.

On appeal, the court held that Transamerica had no duty to defend or indemnify A.C. Label. The Court of Appeal stated:

> The coverage provided by the plaintiff's CGL policy was not triggered during the policy period because plaintiffs had no connection to or nexus with the damage caused by the contamination that occurred on the subsequently acquired property during the policy period.

*Id.* at 1194, 56 Cal.Rptr.2d at 210. Likewise, in *FMC Corp. v. Plaisted and Companies,* 61 Cal.App.4th 1132, 72 Cal. Rptr.2d 467 (1998), the California Court of Appeal cited to *A.C. Label* and held that a "complete factual predicate for a liability subsequently imposed by law must exist during the policy period" in order for coverage to be triggered under a CGL insurance policy. *See FMC Corp.,* 72 Cal. Rptr.2d at 480.

■ Both *FMC Corp.* and *A.C. Label* appear to be directly on point; were they issued by the California Supreme Court they would be dispositive of the instant case. We believe, however, that the cases are in conflict with generally established principles of insurance contract construction as articulated by the California Supreme Court, and that that tribunal would have decided the cases otherwise.[3] Accordingly, we reject the analysis in *A.C. Label* and *FMC Corp.,* and hold that coverage is provided under a CGL policy if the damage occurred within the policy period, but the insured purchased the property after the policy period (although before the state made its claim with respect to the property).

■ The California Supreme Court has established a three-step process for analyzing insurance contracts with the primary aim of giving effect to the mutual intent of the parties. *See AIU Ins. Co. v. Superior Ct. of Santa Clara County,* 51 Cal.3d 807, 821–23, 274 Cal.Rptr. 820, 831–32, 799 P.2d 1253, 1264–65 (Cal.1990). The first step is to examine the "clear and explicit" meanings of the terms as used in their "ordinary and popular sense." *Id.* at 822, 274 Cal.Rptr. at 831, 799 P.2d at 1264. In assessing the terms' meanings, we may not take individual terms out of context: "Language in a contract must be construed in the context of that instrument as a whole ... and cannot be found to be ambiguous in the abstract." *Bank of the West v. Superior Ct. of Contra Costa County,* 2 Cal.4th 1254, 1265, 10 Cal. Rptr.2d 538, 545, 833 P.2d 545, 552 (1992). "Thus, if the meaning a layperson would ascribe to contract language is not ambigu-

---

**3.** Our request for certification noted precisely this point—that *A.C. Label* and *FMC Corp.* were in potential conflict with several California Supreme Court opinions concerning the rules of contract construction. *See K F Dairies,* 179 F.3d at 1226–27. The California Supreme Court's denial of our certification request is in no way an expression of its opinion on the correctness of the judgments in those two cases. *See Trope v. Katz,* 11 Cal.4th 274, 287 n. 1, 45 Cal.Rptr.2d 241, 250 n. 1, 902 P.2d 259, 268 n. 1 (1995) ("It is well established that our refusal to grant a hearing in a particular case is to be given no weight insofar as it might be deemed that we have acquiesced in the law as enunciated in a published opinion of a Court of Appeal when such opinion is in conflict with the law as stated by this court.") (internal quotations omitted); *Shaw v. California Dep't of Alcoholic Beverage Control,* 788 F.2d 600, 605 n. 3 (9th Cir. 1986); *see also* Cal. R. of Ct. 28, Advisory Com. comment ("It has long been established in California law that a denial of hearing is not an expression of the Supreme Court on the merits of the cause.... [D]enial of review will not be an expression of the opinion of the Supreme Court on the correctness of the judgment of the Court of Appeal or on the correctness of any discussion in the Court of Appeal opinion.") (internal citations omitted).

ous, we apply that meaning." *AIU,* 51 Cal.3d at 822, 274 Cal.Rptr. at 831, 799 P.2d at 1264.

If (and only if) a term is found to be ambiguous after undertaking the first step of the analysis, the court then proceeds to the second step and resolves the ambiguity "by looking to the expectations of a reasonable insured." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.,* 5 Cal.4th 854, 875, 21 Cal.Rptr.2d 691, 704, 855 P.2d 1263, 1276 (1993) (citing *American Star Ins. Co. v. Ins. Co. of the West,* 232 Cal.App.3d 1320, 1331, 284 Cal. Rptr. 45, 52 (1991) ("A policyholder's 'reasonable expectation' of coverage *is only relevant* when the policy is ambiguous.") (emphasis added)); *see also AIU,* 51 Cal.3d at 822, 274 Cal.Rptr. at 831, 799 P.2d at 1264 ("If there is ambiguity . . . it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation."). Under California law, an insurance policy provision is "ambiguous when it is capable of two or more constructions both of which are reasonable." *Bay Cities,* 5 Cal.4th at 867, 21 Cal.Rptr.2d at 699, 855 P.2d at 1271.

Finally, if the ambiguity still remains, it is construed against the party who caused the ambiguity to exist. *See AIU,* 51 Cal.3d at 822, 274 Cal.Rptr. at 831, 799 P.2d at 1264. In the insurance context, this is almost always the insurer, as the California Supreme Court has held that ambiguities are generally resolved in favor of coverage, *see id.,* and that the courts are to "generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured." *Id.* (citations omitted).

In *A.C. Label,*[4] the California Court of Appeal departed from this methodology. In the first step of its analysis, the court found that the "terms of the policy *were not ambiguous* as to the coverage of the

policy; it covered plaintiffs' liability during the policy period." *A.C. Label,* 48 Cal. App.4th at 1194, 56 Cal.Rptr.2d at 210 (emphasis added). Immediately after finding that the language of the policy was unambiguous as to coverage, the court stated:

> Coverage for plaintiffs' after-acquired liability for the damage caused during the policy period by contamination of this property could not possibly have been within the reasonable mutual contemplation of the parties at the time they entered into the insurance contract. No reasonable policyholder could have believed that a CGL policy issued for a policy period in 1981 and 1982 would provide coverage for a loss which was not a liability of the policyholder at any time prior to 1984. Any expectation that plaintiffs may have had that this liability insurance policy would apply to after-acquired liability with which they had no connection during the policy period was unreasonable as a matter of law and therefore cannot support an interpretation of this policy in favor of coverage.

*Id.*

Under the procedure set forth by the California Supreme Court, the Court of Appeal's inquiry should have ended upon finding that no ambiguity existed. *See Bay Cities, supra,* 5 Cal.4th at 866, 21 Cal.Rptr.2d at 698, 855 P.2d at 1271; *see also Palmer v. Truck Ins. Exchange,* 21 Cal.4th 1109, 1115, 90 Cal.Rptr.2d 647, 652, 988 P.2d 568, 572 (1999) ("If the policy language is clear and explicit, it governs.") (internal quotation and citation omitted); *Hedging Concepts, Inc. v. First Alliance Mortgage Co.,* 41 Cal.App.4th 1410, 1420, 49 Cal.Rptr.2d 191, 198 (1996) ("When parties have an actual contract covering a subject, a court cannot . . . substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract."); *American Cyanamid Co. v.*

---

4. Because *FMC Corp.* relied on *A.C. Label,* we limit our discussion to *A.C. Label* with the recognition that it is equally applicable to *FMC Corp.*

*American Home Assurance Co.,* 30 Cal. App.4th 969, 978, 35 Cal.Rptr.2d 920, 925 (1994) ("In questions of insurance coverage, the court's initial focus must be upon the language of the policy itself, not upon 'general rules' of coverage that are not necessarily responsive to the policy language."); *20th Century Ins. Co. v. Liberty Mut. Ins. Co.,* 965 F.2d 747, 753 (9th Cir. 1992) (exclusion or limitation on policy coverage cannot be read into the contract merely because it is reasonable) (applying California law).

■ A corollary of the rule under which the California courts give prominence to the unambiguous plain language of insurance policies is the well-established canon that limitations and exclusions on coverage must be "conspicuous, plain and clear." *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 271, 54 Cal.Rptr. 104, 108, 419 P.2d 168, 172 (1966) (exclusionary clause in insurance policy must be "conspicuous, plain and clear"); *20th Century Ins. Co.,* 965 F.2d at 753 (same) (applying California law). *A.C. Label* appears to have violated this canon of construction when it found an implicit exclusion despite the clear language of the policy.

Moreover, the case law underlying the *A.C. Label* decision does not support the opinion's conclusion. *A.C. Label* cited to the "after-acquired company" case of *Cooper Companies v. Transcontinental Insurance Company,* 31 Cal.App.4th 1094, 37 Cal.Rptr.2d 508 (1995), as an "analogous situation," and relied on *Cooper* to support its decision. *See A.C. Label,* 48 Cal. App.4th at 1193, 56 Cal.Rptr.2d at 210.

In "after-acquired company" cases, the insureds are companies that acquire target companies after the expiration of the targets' insurance policies. By acquiring the companies, the insureds acquire the targets' liabilities, including suits for damage that occurred during the years of the insureds' policy periods. The insureds, therefore, seek an extension of coverage on behalf of the acquired entity.

■ In *Cooper,* the central question was whether a policy clause extending coverage to organizations "hereafter acquired" by the insured covered organizations acquired after the expiration of the policy period. Unlike the instant case, in which the court found the policy terms to be clear, in *Cooper* it was established that the term "hereafter acquired" was ambiguous. *See Cooper,* 31 Cal.App.4th at 1103–05, 37 Cal.Rptr.2d at 513–14. The court in *Cooper,* therefore, properly undertook the analysis in the second step of the three-stage process of interpretation prescribed by the California Supreme Court. *Cooper,* then, was not grounded in the terms of the policy, but in public policy considerations and other factors that are part of a "reasonableness" calculation.[5]

KF Dairies's insurance policy states that the insurer "shall have the right and duty to defend any suit seeking damages on account of [ ] bodily injury or property damage" where the injury or damage is "caused by an occurrence." The policy defines an "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither

5. Given that the California Supreme Court has not definitively spoken on many of the public policy issues presented here, our decision does not rest on such considerations. We do note, however, that inasmuch as our decision requires an insurance company to assume an unknown risk, it is perfectly consistent with the basic precepts of the insurance business and insurance law. *See, e.g., Chu v. Canadian Indem. Co.,* 224 Cal.App.3d 86, 274 Cal.Rptr. 20, 25 (1990) ("Insurance typically is designed to protect contingent or unknown risks of harm, not to protect against

harm which is certain or expected.") (citations omitted). Moreover, many of the public policy concerns animating the decision in *A.C. Label* can be assuaged through the insurance contract itself. Insurers are free to exclude from coverage liabilities acquired by the insured after the policy period. *See McLaughlin v. Connecticut General Life Ins. Co.,* 565 F.Supp. 434, 449 (N.D.Cal.1983) ("The simple answer to defendant's contentions is that it should have taken the public policy it urges the court to adopt into consideration when it drafted its contract.").

expected nor intended from the standpoint of the insured." This language is unambiguous. Moreover, there is no language in the policy stating that the insured's liability, as opposed to the damage that serves as the basis for that liability, must arise within the policy period. An exclusion or limitation on policy coverage cannot be read into the insurance contract; rather, such provisions must be "conspicuous, plain, and clear." *20th Century Ins. Co.,* 965 F.2d at 753.

Finally, we note the dissent's reliance on the language of *FMC Corp.* that a factual predicate for a liability subsequently imposed by law must exist during the policy period. *See* 61 Cal.App.4th at 1154, 72 Cal.Rptr.2d at 480. This simply begs the question: what constitutes the policy period? *FMC Corp.* and *A.C. Label* [6] assumed what they were charged with deciding. As the above discussion indicates, when the language of the contract is unambiguous, as it is here, the court's inquiry must end. The express terms of the policy clearly indicate that damage to the claimant is the event that triggers coverage, and any exclusions or limitations are absent from the policy. The decision of the district court is, therefore, REVERSED.

BEEZER, Senior Circuit Judge, dissenting:

KF Dairies had absolutely no connection whatsoever with the properties in question during the policy period, from July 1, 1972 to January 1, 1976. Nevertheless, KF Dairies contends that Fireman's owes it a duty of coverage because the properties that it subsequently acquired turned out to have contamination that might date back to the policy period.

This case boils down to a single question of state law: does a general liability policy provide coverage for liability arising out of real property purchased by an insured after the policy expired? The California Court of Appeals has twice answered this

question in the negative. *See A.C. Label Co. v. Transamerica Ins. Co.,* 48 Cal. App.4th 1188, 1193, 56 Cal.Rptr.2d 207, 210 (1996); *see also FMC Corp. v. Plaisted & Cos.,* 61 Cal.App.4th 1132, 1154–56, 72 Cal.Rptr.2d 467, 480–81 (1998).

In *A.C. Label,* the court held that "[l]iability insurance coverage cannot be created after the fact. The coverage provided by [a comprehensive general liability] policy [is] not triggered during the policy period" when the insured has "no connection to or nexus with the damage caused by contamination that occurred on the subsequently acquired property during the policy period." 48 Cal.App.4th at 1194, 56 Cal.Rptr.2d at 210. Although the court in *A.C. Label* may have unnecessarily reached the issue of the parties' expectations in light of the "unambiguous" conclusion, I believe it did so solely in an effort to bolster the conclusion it had already reached, namely, that an insured's liability must occur during the policy period.

In *FMC Corp.,* the court reached the same conclusion, holding that "a complete factual predicate for a liability subsequently imposed by law must exist during the policy period." 61 Cal.App.4th at 1155, 72 Cal.Rptr.2d at 480. The court further recognized that "it is neither reasonable nor consonant with the terms of the general liability policies before us to require [ ] insurers to cover liabilities based on facts which did not occur until after the policy period." *Id.*

I am convinced that the California Supreme Court would agree with the answer reached by the California Court of Appeals in *A.C. Label* and *FMC Corp. See Nelson v. City of Irvine,* 143 F.3d 1196, 1206–07 (9th Cir.), *cert. denied,* 525 U.S. 981, 119 S.Ct. 444, 142 L.Ed.2d 399 (1998) ("[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to

---

**6.** *A.C. Label* expressed its holding in similar terms. The court stated that the "plaintiffs were not liable for and could not have been

held liable for … damage" that occurred during the policy period. 56 Cal.Rptr.2d at 209.

follow the decisions of the state's intermediate appellate courts.").

The court's opinion today requires that liability for subsequently-acquired properties be explicitly excluded from casualty insurance policies. I would affirm the decision of the district court because the policies at issue never included such coverage in the first place.