102 Cal.Rptr.2d 657 (2000)
85 Cal.App.4th 1016
TOSCO CORPORATION, Plaintiff and Appellant,
v.
GENERAL INSURANCE COMPANY OF AMERICA, Defendant and Respondent.
Tosco Corporation, Plaintiff and Appellant,
v.
Commercial Union Insurance Co., Defendant and Respondent.
Tosco Corporation, Plaintiff and Appellant,
v.
Chicago Insurance Co., Defendant and Respondent.
Nos. A082765, A084044, A086154.
Court of Appeal, First District, Division Four.
December 28, 2000.
Donald W. Brown, David E. Weiss, Edith M. Hofmeister, Dorothy Vinski, Brobeck Phleger & Harrison LLP, San Francisco, Counsel for Appellant.
D. Douglas Shureen, Lisa Ann Hilario, George J. Keller, Rivkin Radler & Kremer, Santa Rosa, Counsel for Respondent Chicago Insurance Company.
Edward T. Clifford, Craig L. Scott, Greve, Clifford, Wengel & Paras, LLP, Sacramento, Counsel for Respondent Commercial Union Insurance Company.
Lisa L. Pan, Foster City, Emilio G. Gonzalez, Law Offices of Donald J. Deshaw, Counsel for Respondent General Insurance Company of America.
*658 SEPULVEDA, J.
Plaintiff Tosco Corporation brought this action against numerous insurers to establish insurance coverage for environmental cleanup costs. The appeals now before us arise from summary judgments entered in favor of three insurers on the authority of A.C. Label Co. v. Transamerica Ins. Co. (1996) 48 Cal.App.4th 1188, 56 Cal.Rptr.2d 207 (AC. Label ), which held that a comprehensive general liability insurer could not be required to defend or indemnify an insured with respect to liabilities arising from property that the insured did not own during the policy period. On appeal plaintiff contends that we should take issue with that decision. We decline to do so, and affirm the judgments.

BACKGROUND
Tosco's third amended complaint sought declaratory relief and damages against respondents General Insurance Company of America (General), Chicago Insurance Co. (Chicago), Commercial Union Insurance Co. (Commercial Union), and many other insurers. Tosco alleged that it was the insured under primary or excess policies of comprehensive general liability (CGL) insurance issued by the defendants between January 24, 1962, and August 1, 1991.[1] General's policy allegedly covered a period from January 24, 1962, to April 27, 1962; Chicago's from March 17, 1971, to March 17, 1972; and Commercial Union's from January 1, 1972 to January 1, 1973.[2] Tosco alleged that each of the policies "provides insurance coverage for all sums that Tosco is or becomes obligated to pay because of bodily injury, property damage, or personal injury," and that the policies "obligate the defendant insurers to pay the costs of investigation and defense against any claim asserted against Tosco because of such damage or injury." The complaint specified two broad categories of claims as to which Tosco asserted coverage under defendants' policies: "environmental claims" by public and private entities arising from the alleged contamination of properties owned by Tosco; and "asbestos claims" seeking damages for bodily injury arising from asbestos exposure on premises owned or operated by Tosco.
Tosco pleaded 10 causes of action. The first, second, sixth, and seventh sought declaratory judgments establishing that all defendants were obligated to indemnify Tosco, and absorb defense and investigation costs, with respect to any environmental or asbestos claims successfully asserted against it. The remaining counts asserted claims against insurers other than respondents.
General moved for summary judgment. For purposes of the motion, General assumed that it had in fact issued a policy to Tosco, as alleged.[3] General asserted that it had no duty to indemnify or defend Tosco for the claims described in the complaint because, as of the stated policy period, Tosco did not own, or have any other relationship to, any of the properties from which those claims arose. General contended that its coverage did not extend to claims arising from property acquired by Tosco after the policy period defined by General's policy. General cited A.C. Label as well as Cooper Companies v. Transcontinental Ins. Co. (1995) 31 Cal. App.4th 1094, 37 Cal.Rptr.2d 508 (Cooper), Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co. (1996) 45 *659 Cal.App.4th 1, 52 Cal.Rptr.2d 690, and unpublished decisions by the superior court and a federal court in Michigan.
Commercial Union brought its own motion for summary judgment, echoing General's argument that it had no obligation to defend or indemnify Tosco with respect to claims arising from property acquired after the policy period. In addition, Commercial Union contended that Tosco had no "insurable interest" in the affected properties during the policy period.
The trial court granted the motions of General and Commercial Union, declaring itself "bound by the doctrine of stare decisis to find that the clauses in question are ambiguous on the issue of liability [for] after-acquired property, and that the reasonable expectations of the policyholder could not, as a mat[t]er of law, include the expectation of coverage for the liability here in question." (Footnote omitted.)[4] The court denied Tosco's motion for reconsideration and entered judgment for General and Commercial Union.
Meanwhile, Chicago had filed its own motion for summary judgment, asserting that it was entitled to judgment under the rationale already adopted by the trial court. Tosco and Chicago entered into a stipulation for summary judgment in which they recapitulated the prior proceedings and declared that under the reasoning already adopted by the court, Chicago was entitled to the same relief granted other defendants. The trial court entered judgment on the stipulated order.
Tosco filed a timely notice of appeal from each judgment. We consolidated all three appeals.

DISCUSSION
The parties agree in substance that the outcome of this appeal hinges on our willingness or unwillingness to follow the holding of the Sixth District in AC. Label, supra, 48 Cal.App.4th 1188, 56 Cal.Rptr.2d 207. Although Tosco asserts that AC Label does not "control," the accompanying argument rests not on the premise that the case is somehow inapposite, but on the contention that it is wrong. Tosco asserts that the case contradicts Supreme Court authority and its holding was "made . . . up out of whole cloth." We reject this characterization.
The policy at issue in AC. Label covered a one-year period ending in 1982. In 1984 the insureds bought a parcel of property that later became the subject of a cleanup and abatement action. The insurer refused to defend, the insureds brought suit, and the trial court dismissed the action on demurrer. A divided panel of the Court of Appeal affirmed. First the court held that coverage under a CGL policy must be established by "the facts in existence at the time that the damage occurred." (A.C. Label, supra, 48 Cal.App.4th at p. 1192, 56 Cal.Rptr.2d 207, italics omitted.) Then the court reasoned that this requirement was not satisfied because "although the damage allegedly occurred during the policy period, plaintiffs, the insureds, were not, and had not been, associated with the property or the groundwater contamination in any way at the time this damage occurred, and therefore plaintiffs were not liable for and could not have been held liable for this damage at the time that this damage occurred." (Ibid, italics omitted.) The court explained that "the absence of coverage . . . is the natural consequence of the fact that CGL occurrence policies cover only the liability of the insured during the relevant policy period. As plaintiffs were not liable for the damage when it occurred, their liability insurance coverage was inapplicable." (Id. at p. 1193, 56 Cal. Rptr.2d 207, italics omitted.) The court further explained, "Liability insurance coverage cannot be created after the fact. The coverage provided by plaintiffs' CGL policy was not triggered during the policy period because plaintiffs had no connection *660 to or nexus with the damage caused by contamination that occurred on the subsequently acquired property during the policy period. The terms of the policy were not ambiguous as to the coverage of the policy: it covered plaintiffs' liability during the policy period. Coverage for plaintiffs' after-acquired liability for the damage caused during the policy period by contamination of this property could not possibly have been within the reasonable mutual contemplation of the parties at the time they entered into the insurance contract. No reasonable policyholder could have believed that a CGL policy issued for a policy period in 1981 and 1982 would provide coverage for a loss which was not a liability of the policyholder at any time prior to 1984. Any expectation that plaintiffs may have had that this liability insurance policy would apply to after-acquired liability with which they had no connection during the policy period was unreasonable as a matter of law and therefore cannot support an interpretation of this policy in favor of coverage." (Id. at p. 1194, 56 Cal.Rptr.2d 207.)
The court then turned to the insured's argument that public policy favored a finding of coverage. The court reasoned that, on the contrary, to impose coverage in such situations would empower the insured to "contrive to make an insurer responsible for the liability of a third party by simply acquiring that liability long after damage attributable to the third party had already occurred. . . . Such an unlimited extension of coverage would permit a party that was responsible for damage to force the insurer of another to `share' that responsibility by simply transferring the party's accrued liability to an insured. Insurance companies could then be drawn into litigation notwithstanding the fact that they had not insured any of the parties that were liable for the damage when it occurred." (AC. Label, supra, 48 Cal. App.4th at pp. 1194-1195, 56 Cal.Rptr.2d 207, italics omitted.) The court recounted the similar observation in Cooper, supra, 31 Cal.App.4th at pp. 1103-1104, 37 Cal. Rptr.2d 508, that to accept the insureds' argument there would enable an asbestos manufacturer whose own insurance was exhausted to effectively acquire additional coverage after the fact through acquisition by another entity with insurance covering the periods in question.
Tosco argues that the analysis in A.C. Label contradicts Supreme Court statements that liability under CGL policies is "triggered" by the occurrence of property damage. (Aerojet-General Corp. v. Transport Indemnity Co. (1997) 17 Cal.4th 38, 56, 70 Cal.Rptr.2d 118, 948 P.2d 909 (Aerojet-General ); Montrose Chemical Corp. v. Admiral Ins. Co. . (1995) 10 Cal.4th 645, 661, 42 Cal.Rptr.2d 324, 913 P.2d 878.) Here there is no doubt that coverage was "triggered" on the subject properties with respect to any CGL policies covering those properties. But the question here is whether policies then issued only to Tosco, which at the time had no connection whatsoever with the properties in question, nonetheless covered such properties. Furthermore the Supreme Court did not address in those cases, and indeed has never addressed, the issue before the court in A.C. Label and now before us: whether CGL policies cover liabilities arising from ownership of properties acquired after the policy period.[5] No case is authority for a proposition not considered by the court. (Agnew v. State Bd. of Equalization (1999) 21 Cal.4th 310, 332, 87 Cal.Rptr.2d 423, 981 P.2d 52.)
Tosco further contends, in essence, that the result in A.C. Label is divorced from both the actual language of the policies and the principles governing the construction and application of insurance policies and contracts in general. This same objection was raised before a slightly different panel of the Sixth District in FMC *661 Corp. v. Plaisted & Companies (1998) 61 Cal.App.4th 1132, 72 Cal.Rptr.2d 467 (FMC). Like AC Label (and the present case), FMC was concerned largely with liability imposed by the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9601 et seq.), and related federal and state laws, which, as the court noted, had come into being after the relevant policy periods. (Id. at p. 1154, 72 Cal.Rptr.2d 467) The court acknowledged that such claims would ordinarily be covered, notwithstanding their complete lack of viability during the policy period, in light of the "well-established rule that liability insurance coverage will extend to liabilities created or enlarged by post-policy period changes in applicable law." (Ibid., discussing AIU Ins. Co. v. Superior Court (1990) 51 Cal.3d 807, 822, fn. 8, 274 Cal.Rptr. 820, 799 P.2d 1253, italics omitted.) However, the court added, in such cases of "statutorily expanded risk," coverage can be imposed only where the insured can demonstrate a "contemporaneous factual predicate," i.e., that all the facts necessary to establish coverage were in existence during the policy period "for [the] liability subsequently imposed by law." (FMC, supra, 61 Cal. App.4th at p. 1154, 72 Cal.Rptr.2d 467.)
Answering the contention that such a limitation had no basis in the language of the policy, the FMC court held in effect that the limitation was implied by law because "it is neither reasonable nor consonant with the terms of the general liability policies before us to require such insurers to cover liabilities based on facts which did not occur until after the policy period. A general liability insurer can realistically be said to be in the business of understanding and taking into account the legislative and judicial dynamics that produce changes in legal theories, but cannot be required to be clairvoyant as to the infinite possible future permutations of facts, fundamental to the very existence of coverage but not in existence during the policy period, once the policy period has expired." (Id. at pp. 1154-1155, 72 Cal.Rptr.2d 467.) The FMC court acknowledged the Supreme Court's admonition in Aerojet-General that insurance policies "`provide what they provide.'" (FMC, supra, 61 Cal. App.4th at p. 1155, 72 Cal.Rptr.2d 467, quoting Aerojet-General, supra, 17 Cal.4th at p. 75, 70 Cal.Rptr.2d 118, 948 P.2d 909.) However, the Supreme Court had also described this principle as applicable "only `[a]s a general matter' and by no means inflexibly." (FMC, supra, 61 Cal.App.4th at p. 1155, 72 Cal.Rptr.2d 467, quoting Aerojet-General, supra, 17 Cal.4th at p. 75, 70 Cal.Rptr.2d 118, 948 P.2d 909.) The FMC court also noted that the Supreme Court had imposed duties on insurers that it frankly acknowledged could not be justified by policy language. Thus in Buss v. Superior Court (1997) 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766, the Supreme Court reaffirmed the duty of an insurer to defend an entire "mixed action," i.e., one presenting both covered and excluded claims. (Id. at pp. 48-9, 65 Cal.Rptr.2d 366, 939 P.2d 766.) The court in Buss wrote, "We cannot justify the insurer's duty to defend the entire `mixed' action contractually, as an obligation arising out of the policy, and have never even attempted to do so. . . . [¶] . . . [W]e can, and do, justify the insurer's duty to defend the entire `mixed' action prophylactically, as an obligation imposed by law in support of the policy." (16 Cal.4th at pp. 48-9, 65 Cal.Rptr.2d 366, 939 P.2d 766, fn. omitted; see FMC, supra, 61 Cal.App.4th at p. 1155, 72 Cal.Rptr.2d 467.) The FMC court opined that to require a factual predicate for coverage during the policy period is "perhaps comparable in significance to . . . the duty to defend `mixed' actions" and is "fundamental to the concept of liability insurance." (Id. at p. 1155, 72 Cal.Rptr.2d 467.) Accordingly it reaffirmed its holding in A.C. Label. (FMC, supra, 61 Cal. App.4th at p. 1154, 72 Cal.Rptr.2d 467.)
We note that A.C. Label was cited and quoted with approval by Division Five of this court in General Accident Insurance Co. v. Superior Court (1997) 55 Cal. *662 App.4th 1444, 1453-1454, 64 Cal.Rptr.2d 781. Although the Ninth Circuit has recently reached a contrary conclusion (In re K F Dairies, Inc. & Affiliates, supra, 224 F.3d 922), we see no reason to depart from the holdings of our fellow Courts of Appeal. Accordingly, we find no error in the trial court's granting of summary judgment in favor of the respondent insurers.
The judgments are affirmed.
REARDON, Acting P.J., and WOOLARD, J.[*], concur.
NOTES
[1] It is undisputed that Tosco was incorporated in 1955 as The Oil Shale Corporation, changing its name to Tosco in 1976. For simplicity we will refer to it as "Tosco" throughout this opinion.
[2] The Commercial Union policy was allegedly issued by Employers Surplus Lines Insurance Co., to whose obligations Commercial Union was alleged to have succeeded.
[3] General stated that no policy had yet been discovered and that the only relevant information disclosed by Tosco was a broker's invoice identifying General as "company" and The Oil Shale Corporation as "assured." The invoice reflected an inception date of January 24, 1962, an expiration date of April 27, 1962, and a premium of $29.93.
[4] The court also granted motions by several other defendants who had filed "joinders" in the motions of General and Commercial Union. Those defendants are not now before us.
[5] Indeed, as recounted by the Ninth Circuit Court of Appeals, our Supreme Court has recently declined that court's request for certification of the identical issue. (In re K.F. Dairies, Inc. & Affiliates (9th Cir.2000) 224 F.3d 922, 924.)
[*] Judge of the San Francisco Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.