**GE ENGINE SERVICES UNC HOLDING I, INC. and UNC Pacific Airmotive Corporation, Plaintiffs,**

v.

**CENTURY INDEMNITY CO., The Hartford Accident and Indemnity Co., The Travelers Indemnity Co., Travelers Casualty and Surety Co., Allstate Insurance Co., and Northbrook Insurance Co., Defendants.**

No. CV–01–2551–ER.

United States District Court, C.D. California.

Nov. 5, 2001.

1238

Howard D Gest, David W Burhenn, Burhenn & Gest, Los Angeles, CA, for Plaintiffs.

Alan S Berman, Scott M Dreyer, Berman & Aiwasian, Los Angeles, CA, for Century Indem. Co., defendant.

Philip E Smith, Suzanne M Burke, Smith Ellison & Harraka, Irvine, CA, James P Ruggeri, George W Mayo, Jr., Hogan & Hartson, Washington, DC, for Hartford Acc. and Indem. Co.

Larry Mark Golub, Maria A Audero, Barger & Wolen, Los Angeles, CA, for Travelers Indem. Co.

Bruce E Copeland, Beth L. Appelbaum, Nixon Peabody, San Francisco, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

RAFEEDIE, Senior District Judge.

Having read and considered the papers filed in connection with the Defendant Hartford Accident and Indemnity Company's Motion For Judgment On The Pleadings, and having heard oral argument by counsel, the Court now reaches the following CONCLUSIONS:

[1] Defendant Hartford Accident & Indemnity Company ("Hartford") brings a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). The remaining defendants—Century Indemnity Co. ("Century"), Travelers Indemnity Company ("TIC"), Travelers Casualty And Surety Company ("TCSC" and collectively with TIC, "Travelers"), and Allstate Insurance Company ("Allstate"), as successor in interest to defendant Northbrook Insurance Company ("Northbrook")—have all filed joinders to the Hartford motion.

## BACKGROUND

[2] This is an action for a declaratory judgment and for damages for breach of various insurance contracts. Plaintiff GE Engine Services UNC Holding I, Inc. ("GE Engine") is the successor in interest to UNC Resources, Inc. ("UNC Resources") and United Nuclear Corporation ("UNC"). Plaintiff UNC Pacific Airmotive Corporation ("Pacific Airmotive")[1] operates an engine repair facility in Burbank, California. Pacific Airmotive was purchased by UNC Resources in 1985. Defendants are insurance companies that issued comprehensive general liability ("CGL"), umbrella, and excess insurance policies to UNC and UNC Resources from 1972 through 1984 (the "UNC Policies").[2] The last of these policies expired June 1, 1984, before UNC Resources purchased Pacific Airmotive.

[3] In February 1991, the United States Environmental Protection Agency ("EPA") filed a complaint against Lockheed Martin Corporation ("Lockheed") under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") for response costs for envi-

---

1. UNC Pacific Airmotive Corporation is the successor in name to Pacific Airmotive Corporation. As used herein, "Pacific Airmotive" refers to both.

2. The Complaint identifies several policies issued by Hartford spanning the period of August, 1973 through June 1, 1981 (the "Hartford Policies"); one policy issued by Century's predecessor in interest, Insurance Company of North America, effective August 1, 1972 to August 1, 1973 ("the Century/INA Policy"); several policies issued by TIC spanning the period of June 1, 1981 to June 1, 1984 (the "TIC Policies"); several policies issued by TCSC's predecessor in interest, the Aetna Casualty & Surety Company, spanning the period of August 1, 1973 to June 1, 1982 (the "Travelers/Aetna Policies"); and several policies issued by Northbrook, Allstate's predecessor in interest, spanning the period of August 1, 1977 to June 1, 1981 (the "Allstate/Northbrook Policies").

ronmental damage at the North Hollywood Area Superfund Site, which included Burbank properties operated by Pacific Airmotive (the "Burbank Sites"). Lockheed subsequently commenced a series of lawsuits against various defendants, including the Plaintiffs in this action, seeking to recoup its response costs. In addition, in 1997, residents and property owners in Burbank sued Plaintiffs for bodily injury, property damage, and personal injuries stemming from environmental contamination at the Burbank Sites.

[4] In response to these lawsuits, Plaintiffs requested indemnification and defense from each of the defendant insurance companies under the UNC Policies, on the theory that contamination at the Burbank Sites was ongoing during the applicable policy periods, and thus coverage under the UNC Policies was "triggered" during the policy period even though UNC Resources did not purchase Pacific Airmotive until after the last of the UNC Policies had expired. Defendants declined coverage.

[5] The tort claims were subsequently settled. Trial in the Lockheed matter was held in August, 1996, in the United States District Court for the Central District of California before the Honorable Mariana Pfalzer. The court held that UNC and Pacific Airmotive, as well as a third defendant not involved in this action, were each liable for contribution to Lockheed's response costs in the total amount of $9,877,714.93, plus future costs and interest. The court found UNC liable on three grounds—as the alter ego of Pacific Airmotive, and as an "operator" and "current owner" of the Burbank sites under CERCLA.

### RULE 12(c) STANDARD

[6] Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay the trial." Fed. R.Civ.P. 12(c). In considering a motion for judgment on the pleadings, the court must accept all material allegations of the complaint as true and view them in the light most favorable to the plaintiff. *NL Industries v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). Dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Sun Savings and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir.1987).

[7] Although the Court generally may not consider any material beyond the pleadings in ruling on a 12(c) motion without converting the motion into one for summary judgment, *see* Fed.R.Civ.P. 12(c), the Court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449 (9th Cir.1994). The Court may therefore consider the insurance policies attached by Hartford and the other defendants to their respective pleadings, as the contents of these documents are alleged by the Plaintiff in the complaint, and Plaintiff has offered no objections as to their authenticity.

[8] The Court may also consider facts that are susceptible to judicial notice. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190 (9th Cir.1988). The Court therefore grants Plaintiffs' request for judicial notice of the Second Amended Findings of Fact and the Amended Conclusions of Law filed June 6, 1997 in *Lockheed Martin Corp. v. Crane Co.*, Case No. CV–94–2717 MRP in the United States District Court for the Central District of California.

### GOVERNING LAW

[9] The parties agree that California law applies for purposes of this motion.

In deciding this motion, then, the Court looks to first to decisions of the California Supreme Court, and secondarily, to decisions of the California Courts of Appeal. *Nelson v. City of Irvine*, 143 F.3d 1196, 1206–07 (9th Cir.), *cert. denied*, 525 U.S. 981, 119 S.Ct. 444, 142 L.Ed.2d 399 (1998) ("[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.").

## FRAMEWORK FOR INSURANCE POLICY INTERPRETATION

■ [10] The California Supreme Court has adopted a three-step process for insurance policy interpretation. *AIU Insurance Co. v. Superior Court*, 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990). In step one, the court looks to the plain meaning of the policy terms, relying upon "the 'clear and explicit' meaning of the [policy] provisions, interpreted in their 'ordinary and popular sense.'" *Id.* at 822, 799 P.2d 1253. If the court is faced with ambiguous language, then analysis proceeds in the second step to evaluating the reasonable expectations of the insured, thus "interpreting the provision in the sense in which the [insurer] reasonably believed at the time of making it, that the [insured] understood it." *Id.* If ambiguity still remains, then the court will apply the third step of construing ambiguous language against the party who caused the uncertainty to exist (usually the insurer). *Id.*

[11] Based on this framework, the Court now evaluates whether Plaintiffs are entitled to coverage under the UNC Policies for any liability they may have incurred as a result of environmental contamination at the Burbank Sites.

## COVERAGE FOR UNC/GE ENGINE

■ [12] Plaintiffs assert that GE Engine's liability should be covered because its predecessors in interest, UNC and UNC Resources, were named insureds under the UNC Policies, and incurred CERCLA liability based on "occurences" falling within the relevant policy periods, even though neither GE Engine nor UNC Resources had any connection to Pacific Airmotive or the Burbank Sites at that time. However, Plaintiff's argument ignores the "axiomatic" rule that insurance policies must be interpreted as a whole, and therefore even where "the insuring agreement may appear to extend coverage to [the parent's liabilities] attributable to [its after-acquired subsidiary], the insurance agreement must be read in conjunction with the 'named insured' provision." *Armstrong World Indus., Inc. v. Aetna Casualty & Surety Co.*, 45 Cal.App.4th 1, 52 Cal.Rptr.2d 690, 725 (1996) (citations omitted). Thus, as to both Plaintiffs, coverage turns upon whether Pacific Airmotive is a "named insured" under the various UNC Policies.

## THE NAMED INSURED PROVISIONS

[13] **The Hartford Policies:** The Hartford policies contain three different definitions of "Named Insured." The first unambiguously states that the term includes "any corporation acquired or formed *during the policy period* as a subsidiary of [UNC]." McLaughlin Decl., Exh. 1 (emphasis added). Other Hartford policies provide no explicit temporal limitation, and define "Named Insured" to include "any ... organization coming under the first Named Insured's control and of which it assumes active management," or "any ... corporation ... or entity or any tier owned, actively managed or controlled by the named insured as now exist *or may hereafter be constituted.*" McLaughlin Decl., Exhs. 2, 3 (emphasis added).

[14] **The Century/INA Policy:** This policy was issued to "United Nuclear Cor-

poration and Subsidiary Companies." "Persons Insured" under the policy include the named insured and "any executive officer, director, or stockholder thereof while acting within the scope of his duties as such." Dreyer Decl., Exh. A.

[15] **The Allstate/Northbrook Policies:** Two of the four Allstate/Northbrook policies contain named insured provisions incorporating the definitions contained in the underlying Hartford policies described above. The other two Allstate/Northbrook policies additionally define "Named Insured" to include companies that "are owned or financially controlled ... as now exist *or hereafter constituted.*" Jung Decl., Exhs. A–D (emphasis added).

[16] **The TIC Policies:** The four TIC policies were issued to UNC Resources, and each contains an endorsement defining "Named Insured" to include UNC Resources, its disclosed subsidiaries as of the policy inception date, and "any corporation acquired or formed *during the policy period* as a subsidiary of any entity designated above," subject to certain notification requirements. Fitts Decl., Exhs. A–D (emphasis added).

[17] **The Travelers/Aetna Policies:** Each of the several Travelers/Aetna Policies are excess or umbrella policies which refer back to the "Named Insured" definitions contained in their respective underlying policies. The underlying policies are the Hartford and Allstate/Northbrook Policies described above, which incorporate various versions of the "hereafter constituted" language.

## POLICY INTERPRETATION

■ The UNC Policies described above can be reduced to three essential categories for purposes of policy interpretation: (1) policies explicitly limiting coverage to subsidiaries owned or acquired *during the policy period;* (2) policies listing "UNC and its subsidiaries" as the named insured

without further definition of which subsidiaries are included; and (3) policies containing some variation of the "hereafter acquired or constituted" provision.

■ [19] As to the first category, which includes certain of the Hartford Policies as well as the TIC policies, the policy language plainly excludes coverage for Pacific Airmotive, because it was not owned or acquired during the policy period, and thus Plaintiffs' claims relating to these policies fail as a matter of law.

■ [20] As to the second category, which includes only the Century/INA policy, coverage is also plainly excluded. Even though there is no explicit temporal limitation (i.e., the policy was not issued to "UNC and its Subsidiaries owned or acquired during the policy period"), the policy period is an essential element of a liability insurance contract which must be taken into consideration when looking at the policy as a whole. *Armstrong,* 52 Cal. Rptr.2d at 726. Therefore, the policy period necessarily limits subsidiaries covered under the Century/INA policy to those owned or acquired during the policy period.

■ [21] The remaining UNC Policies of course fall into the third and final category of policies incorporating some version of the "hereafter constituted" or "hereafter acquired" provision. As Hartford notes, this Court is not the first to apply the California Supreme Court's three-step process to interpret whether "hereafter constituted or acquired" language triggers coverage for damages caused during the policy period by a company acquired after the expiration of the policy period. The California Court of Appeals did so first in *Cooper Cos., Inc. v. Transcontinental Insurance Co.,* 31 Cal.App.4th 1094, 37 Cal. Rptr.2d 508 (1995), and again in *Armstrong World Indus., Inc. v. Aetna Casual-*

*ty & Surety Co.*, 45 Cal.App.4th 1, 52 Cal.Rptr. 690 (1996).

[22] Applying the initial "plain meaning" test, both the *Cooper* and *Armstrong* courts noted a potential ambiguity in that "hereafter acquired" could refer in the abstract to either companies acquired at any time in perpetuity or companies acquired after the inception of the policies but before the policies expired. 37 Cal.Rptr.2d at 513, 52 Cal.Rptr.2d at 725. While noting the "troubling ramifications of construing the 'hereafter acquired' language to run in perpetuity," the *Cooper* court found the language to be ambiguous within the context of the entire policy, which contained other endorsements with specific temporal limitations. Moving on to the second step, however, and looking to the reasonable expectations of the insured, the court found that even "in the absence of an explicit temporal limitation, a reasonable insured would conclude that the language is limited by the policy period." 37 Cal. Rptr.2d at 516. The *Armstrong* court reached the same conclusion without proceeding beyond the initial "plain meaning" analysis. 52 Cal.Rptr.2d at 726 (noting that "[t]he period of time during which the insurance policy is effective is an essential element of a liability insurance contract" and, therefore, "the word 'hereafter' cannot reasonably be read as referring to any time in the indefinite future," when read in conjunction with the policy period limitation).

[23] Plaintiff asks the Court to disregard the holdings in *Cooper* and *Armstrong* and deny Hartford's motion based upon *In re KF Dairies, Inc.*, 224 F.3d 922 (9th Cir.2000). In that case, the Ninth Circuit concluded that the debtor's CGL policy provided coverage for environmental

damage claims which arose during the policy period but related to property which the debtor purchased *after* the policy period had expired. With this ruling, the Ninth Circuit expressly declined to follow two opinions issued by the Sixth District of the California Court of Appeal—*A.C. Label Co. v. Transamerica Ins. Co.*, 48 Cal. App.4th 1188, 56 Cal.Rptr.2d 207 (1996), and *FMC Corp. v. Plaisted and Companies*, 61 Cal.App.4th 1132, 72 Cal.Rptr.2d 467 (1998).[3] The Ninth Circuit concluded based upon "generally established principles of insurance contract construction" that the California Supreme Court would have ruled differently than the Courts of Appeal. *KF Dairies*, 224 F.3d at 925. The Ninth Circuit found that the court in *AC Label* misapplied the three-part test by proceeding to analyze the reasonable expectations of the insured *after* finding that the policies in question "unambiguously covered plaintiff's liability during the policy period," and by failing to apply the corollary to the plain-meaning rule that limitations on coverage must be "conspicuous, plain and clear." *Id.* at 926–27, *citing AC Label*, 56 Cal.Rptr.2d at 210.

[24] Notably, *KF Dairies* expressly distinguished "after-acquired company" cases such as *Cooper* and *Armstrong* from "after-acquired property" cases such as *A.C. Label* and *FMC Corp.* The distinction stems from the fact that courts in after-acquired company cases must look to the "named insured" provision, thereby triggering interpretation of the "hereafter acquired" language, whereas courts in after-acquired property cases need not factor this provision into their analysis. Thus, *KF Dairies* has no application to this after-acquired company case, and this Court adopts the reasoning set forth by the Cali-

---

**3.** The First District Court of Appeal has since adopted the reasoning set forth by the Sixth District in *AC Label* and *FMC Corp.* and expressly declined to follow *KF Dairies*. *See*

*Tosco Corp. v. General Ins. Co. of America*, 85 Cal.App.4th 1016, 102 Cal.Rptr.2d 657 (2000).

fornia Court of Appeals in *Cooper.*[4] Specifically, the Court finds that in light of the applicable "named insured" provisions, UNC Resources could not reasonably expect coverage for its after-acquired subsidiaries.

## CONCLUSION

[25] For the foregoing reasons, the Court hereby GRANTS the Motion For Judgment on the Pleadings as to all Defendants.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve, by United States mail or by telefax, copies of this Order on counsel for the parties in this matter.

---

**4.** Plaintiff argues that the peculiar circumstance of UNC's "current owner" liability under CERCLA takes this case outside the realm of after-acquired company cases. In other words, Plaintiff asserts that its predicament is more analogous to that of the insured in *KF Dairies,* who bought a contaminated parcel of real property, than that of the insureds in *Cooper* and *Armstrong,* who bought companies with as-yet undiscovered liabilities. However, regardless of what the "current owner" label may signify in a CERCLA action, here it cannot change the underlying fact that UNC's liability arose out of purchasing a company, not a piece of real property, and therefore assessing coverage for both UNC and Pacific Airmotive entails interpretation of the "named insured" provision.