**Nejde F. YAGHOUBIAN,
Plaintiff—Appellant,**

v.

**NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,
Defendant—Appellee.**

No. 01–55594.

D.C. No. CV–00–03992–JSL.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 2002.

Decided July 22, 2002.

---

Reinhardt, Circuit Judge, filed an opinion concurring in part and dissenting in part.

Before FERGUSON, REINHARDT, and GRABER, Circuit Judges.

### MEMORANDUM *

Plaintiff Nejde F. Yaghoubian appeals the granting of summary judgment against him in his diversity action against Defendant Northwestern Mutual Life Insurance Company. On de novo review, we affirm.

#### A. *Breach of Contract*

To be eligible for lifetime benefits under his disability insurance policy, Yaghoubian had to have been totally disabled on the policy anniversary closest to his 60th birthday, i.e., August 22, 1994, and had to continue to be totally disabled until the first policy anniversary after his 65th birthday, i.e., August 22, 1999. Under the terms of the policy, total disability meant that he was (1) "unable to perform the principal duties of his occupation," and (2) not "gainfully employed in any occupation."

Yaghoubian interprets the first requirement to mean "unable to perform *any*

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

*of* the principal duties of his occupation." Because he was unable to perform one of his principal duties (marketing for Quantech Systems), he asserts that he was totally disabled.

There are two problems with Yaghoubian's proposed interpretation. First, his reading of "total disability" would ·duplicate the policy's definition of "partial disability" and thus take one part of the contract out of context. That result is inconsistent with California law. *K F Dairies, Inc. & Affiliates v. Fireman's Fund Ins. Co. (In re K F Dairies, Inc. & Affiliates)*, 224 F.3d 922, 925–26 (9th Cir. 2000). Second, it would add words to the contract. The contractual phrase "the principal duties of his occupation" contains no additional limiting term. The case on which Yaghoubian principally relies, *Erreca v. Western States Life Insurance Co.*, 19 Cal.2d 388, 121 P.2d 689 (Cal.1942), likewise limited "total disability" to circumstances in which the insured was unable to perform all his principal duties. *Id.* at 695–96.

In the alternative, Yaghoubian argues that his *only* principal duty was marketing. That argument is belied by his conduct and his statements. For example, during the period 1985 through 1999, he served from time to time as an engineering consultant for the J. Paul Getty Museum, the Huntington Library, and the Los Angeles County Museum of Art. His project duties included meeting or discussing projects with clients; conducting site visits and field work; devising conservation methods and performing other engineering analyses; drafting proposals based on those methods; preparing technical reports; and constructing, or subcontracting out the construction of, the prototypes and actual products. Additionally, in his requests for continuation of proportionate benefits, he admitted that project work was one of his principal duties, both before and after the onset of his disability. He estimated that he spent 30% of his time doing project work. He also performed services as an arbitrator.

Yaghoubian argues that these duties for existing clients were "non-principal" because they did not generate a profit. Profitability is irrelevant to the first prong of the test, the capability to perform one's principal duties.

As a matter of law, Yaghoubian was not totally disabled because he could perform some of his principal duties. We therefore need not reach the question whether he was "gainfully employed."

**B.** *Fraud*

 Yaghoubian's fraud claims also fail as a matter of law. The first element is misrepresentation. *Lazar v. Superior Court*, 12 Cal.4th 631, 49 Cal.Rptr.2d 377, 909 P.2d 981, 984 (Cal.1996). Yaghoubian argues that Defendant falsely represented that he had to be unable to perform all principal duties of his occupation to be eligible for lifetime benefits.[1] As we have explained, however, that representation was true. Defendant was obligated to pay Yaghoubian only partial disability benefits, which it did for fourteen years.

**C.** *Covenant of Good Faith and Fair Dealing*

 There is no triable issue of fact on the claim for breach of the implied duty

---

1. Yaghoubian asserts in the alternative that Defendant misled him by representing that lifetime benefits would be paid. But only his own vague, uncorroborated, and self-serving declaration supports this claim, and the declaration therefore is insufficient to create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002).

of good faith and fair dealing. Yaghoubian first claims that Defendant misrepresented that he was ineligible for lifetime benefits due to his ability to perform *some* of his principal duties. As previously discussed, that statement was true. He next claims that Defendant did not notify him that he was ineligible and did not reasonably investigate. But Yaghoubian had notice of his ineligibility in the lifetime benefit endorsement, which stated that it would terminate on the policy anniversary closest to the insured's 60th birthday if he was not totally disabled. He continued to request *partial* disability benefits, thus demonstrating his awareness that he was not totally disabled. Finally, Defendant's failure to settle this case does not demonstrate bad faith because Defendant had a legitimate reason to dispute its liability based on its belief that Yaghoubian could perform some of his principal duties.

#### D. *Estoppel*

Because Yaghoubian was only partially disabled between 1994 and 1999, he was ineligible for lifetime benefits and cannot invoke equitable estoppel to extend coverage. Equitable estoppel cannot create insurance coverage where it did not originally exist. *Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739, 161 Cal.Rptr. 322, 339 (Ct. App.1980).

#### E. *Infliction of Emotional Distress*

Yaghoubian's claims for intentional and negligent infliction of emotional distress rely on the assertion that Defendant acted in bad faith. But, as we have held, there was no bad faith as a matter of law. Further, there was no evidence regarding the severity of the alleged emotional distress.

#### F. *Punitive Damages*

Yaghoubian presented no evidence to support his bare allegation that Defendant devised and carried out a scheme to destroy his future. The record discloses no triable issue of fact as to alleged malice or, as we have said already, bad faith. Accordingly, the claim for punitive damages is barred as a matter of law.

AFFIRMED.

REINHARDT, Circuit Judge, concurring in part, dissenting in part.

Because I believe that genuine questions of material fact exist as to whether Yaghoubian satisfied the eligibility criteria for total disability benefits, I respectfully dissent from the majority's affirmance of the grant of summary judgment in Northwestern's favor on the breach of contract claim. First, it is disputed whether Yaghoubian was totally unable to perform his "principal duties." That term is nowhere defined in the policy at issue. The record contains evidence that when Yaghoubian purchased a lifetime disability endorsement from Northwestern, he considered the marketing and client development aspects of his position to be the "principal" duties he performed as the proprietor of Quantech Systems. There also exists evidence demonstrating that before becoming disabled, Yaghoubian spent the bulk of his time engaged in marketing and business development. The majority is correct that *Erreca v. Western States Life Insurance Co.*, 19 Cal.2d 388, 121 P.2d 689, 695–96 (Cal.1942), holds that in order to be "totally disabled" under California law, a policyholder must be unable to perform *all* of his principal duties. To the extent that *Erreca* sheds any light on how to define what principal duties are, however, it supports Yaghoubian's position. In *Erreca*, the policyholder could perform some work-related tasks, but not others, and the court held that "the question of what amounts to total disability is one of fact." The same is true here.

A question of material fact exists with respect to the policy's second eligibility criterion as well. According to Yaghoubian's policy, he was ineligible for total disability benefits only if he was "gainfully" employed as of August 22, 1994. California law requires that we interpret each term of the insurance policy in accordance with its ordinary meaning. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal.4th 854, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (Cal.1993). "Gainful" is defined as "profitable" or "lucrative." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (1979). Yaghoubian's business failed to generate any income for him between the years 1994 and 1999, although it did reimburse him for a number of significant expenses. Although Yaghoubian was indeed employed by Quantech during the years in question, a reasonable jury could conclude that the reimbursement of business-related expenses did not render Yaghoubian gainfully employed. Accordingly, in my view, the district court's grant of summary judgment for Northwestern on the question of coverage was improper, and I dissent from the affirmance of that decision.

I agree with the majority that summary judgment was proper with respect to Yaghoubian's fraud, emotional distress, punitive damages, and bad faith claims.