Filed 4/10/2013  Demma v. Dominican Hospital CA6
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SOLOMON ERIC DEMMA,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>DOMINICAN HOSPITAL et al.,<br><br>     Defendants and Respondents. | H038321<br>(Santa Cruz County<br> Super. Ct. No. CV173181) |

#### INTRODUCTION

Appellant Solomon Demma appeals from a judgment dismissing his complaint against Dominican Hospital and its employees Vicki Miranda, George Jarrow, Nannette Mickiewcz, and Heidi Troutner (collectively Dominican).  Demma claims the trial court erred in sustaining Dominican's demurrer without leave to amend, asserting that his complaint sufficiently stated causes of action for general negligence and intentional torts, and that his claims are not barred by the statute of limitations under Code of Civil Procedure section 340.5.

Reviewing Demma's complaint on the merits, we find it alleged matters barred by the applicable statute of limitations, and further that it failed to adequately state a claim. We will therefore affirm the trial court's judgment in favor of Dominican.

#### FACTUAL AND PROCEDURAL BACKGROUND

Demma's underlying complaint includes a cause of action for general negligence arising from events in 2010, as well as two causes of action for intentional torts in March

2011 and August 2011.  Demma also requested punitive damages based on respondents' "malice" and "oppression" as defined in Civil Code section 3294.[1]  Demma represented himself in the proceedings below, and represents himself again on appeal.  The facts alleged in Demma's complaint are summarized briefly here.

*Negligence Claim*

Demma was a patient at Dominican Hospital's Behavioral Health Unit several times in 2010, where he was admitted under Welfare and Institutions Code section 5150 72-hour mental health holds.[2]  On those occasions, Demma was also certified for additional days of intensive treatment for his mental disorder under Welfare and Institutions Code section 5250.[3]

Demma claimed that while at Dominican, staff members negligently evaluated and treated his symptoms, and that as a result of Dominican's negligence, his symptoms escalated to the point where Demma struck fellow patients twice and struck a hospital security guard once.

The incidents where Demma struck other patients occurred sometime in August and October 2010.  Demma claimed that Dominican staff were present when he struck

---

[1] Civil Code section 3294 defines "malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others," and defines "oppression" as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."  (Civ. Code, § 3294, subd. (c)(1)-2).)

[2] Welfare and Institutions Code section 5150 allows certain individuals such as peace officers to involuntarily commit those who are a danger to themselves or others, or who are gravely disabled as a result of a mental disorder, to a designated mental health facility for a 72-hour treatment and evaluation.

[3] Welfare and Institutions Code section 5250 provides that in certain situations individuals subject to a 72-hour Welfare and Institutions Code section 5150 hold may be certified for an additional 14 days of intensive treatment.

2

the patients, yet hospital staff failed to intervene despite their knowledge of his symptoms and past behavior. According to Demma, his verbal altercations with fellow patients ultimately turned physical as a direct result of Dominican's failure to act.

The third incident of alleged general negligence occurred in December 2010. Demma believed that a fellow patient was stalking him and mimicking his actions. When Demma requested assistance from hospital staff, they "smirked" and acted rudely toward him. The staff's rude behavior and failure to intervene sparked another escalating situation, after which Demma was placed in an isolation room, hospital staff called a security guard, and Demma struck him in the face.

As a result of these incidents, Demma was taken to the Santa Cruz County jail several times, which placed him in "grave danger," according to the complaint

### *Intentional Tort Claim from March 2011*

Demma was charged with misdemeanor battery based on one or more of the incidents alleged in his negligence claim. A hospital social worker told Demma the charges had been dropped, and Demma's mother confirmed with the social worker that the charges were indeed dropped. Demma asserts that contrary to the information provided by the hospital social worker, the charges were not dropped. Due to the misinformation, Demma missed his court date and spent six days in county jail in March 2011 for failing to appear. The trial judge in Demma's criminal matter then referred him, presumably under Penal Code section 1368, to Atascadero State Hospital where he stayed for two months until he was deemed competent to stand trial. Demma lost $5,000 in "disability grant monies" during the time he spent at the state hospital. Demma was ultimately placed on probation for four years in the misdemeanor case.

### *Intentional Tort Claim from August 2011*

On August 14, 2011, Demma was again taken to Dominican Hospital by sheriff's deputies on a Welfare and Institutions Code section 5150 mental health hold. Hospital

3

personnel kept Demma in the emergency room instead of the hospital's Behavioral Health Unit because the unit refused to admit him due to his previous assaultive behavior at the hospital, and further refused to have a psychiatrist examine him. Demma claimed that Dominican Hospital employees slandered him to other institutions, such that other hospitals became too "frightened" to admit him. Demma argued that the hospital's failure to admit and properly evaluate him violated the provisions of Welfare and Institutions Code section 5150.1 relating to the transport and assessment of individuals being held under section 5150.

### *The Complaint*, *Demurrer*, *and Motion to Strike*

Demma filed a complaint against Dominican on January 31, 2012, alleging a cause of action for general negligence and two causes of action for intentional torts. Demma requested actual damages of $5,000 and punitive damages of $50,000 for malice and oppression.

Dominican demurred to Demma's complaint on March 7, 2012. As to the claim of general negligence, Dominican reasoned that although Demma labeled his claim "general negligence," the substance of the complaint sounded in professional negligence. Accordingly, Dominican argued that Demma's claim was barred by the one-year statute of limitations provided in Code of Civil Procedure section 340.5. Dominican also challenged Demma's "intentional tort" cause of action as unclear, failing to state a cause of action, and appearing to be made by Demma's mother, Mary Carman, who lacked standing to bring an action on Demma's behalf.

Along with its demurrer, Dominican moved to strike Demma's request for punitive damages pursuant to Code of Civil Procedure section 425.13, subdivision (a). Under that section, no claim for punitive damages arising out of professional negligence by a health care provider may be made without an order allowing such a claim to be filed in an amended pleading. (Code Civ. Proc., § 425.13.) Dominican argued that since

4

Demma's complaint sought damages for acts of professional negligence by its staff, under Code of Civil Procedure section 425.13, subdivision (a), Demma needed leave of the court to seek punitive damages.

On April 16, 2012, the trial court held a hearing on the demurrer, noting that Demma never filed an opposition. Based on the moving papers and the argument of Dominican's counsel, the court sustained the demurrer without leave to amend, entering judgment in favor of Dominican on April 20, 2012.

Demma filed a timely notice of appeal on May 16, 2012.

### STANDARD OF REVIEW

" 'On appeal from a judgment dismissing an action after the sustaining of a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. . . .' " (*A.C. Label Co. v. Transamerica Ins. Co.* (1996) 48 Cal.App.4th 1188, 1191.) However, the appellate court does not treat the demurrer as admitting contentions, deductions, or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The appellate court must review the complaint and decide if there is a reasonable possibility that an amendment may cure the defects. If an amendment may have cured the complaint, it is an abuse of discretion not to allow leave to amend and reversal is necessary. (*Ibid.*) "The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

The determination of which statute of limitations applies to a particular cause of action is a question of law that we review de novo. (*McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1164.)

We recognize that Demma appears before us in propria persona. However, a self represented party must be "treated like any other party, and is entitled to the same, but no

5

greater consideration than other litigants and attorneys." (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210.) Self-represented parties are subject to the same procedural rules as those who are represented by attorneys. (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113.)

## DISCUSSION

On appeal, Demma argues that he timely filed his complaint because he alleged a claim of general negligence, not professional negligence, making Code of Civil Procedure section 340.5 inapplicable. Demma further contends that he sufficiently stated causes of action in the original complaint, and that he may seek punitive damages without prior approval by the court.

### I. *No Forfeiture for Failure to Oppose Demurrer or Request Leave to Amend*

Dominican argues that Demma forfeited his claims on appeal when he failed to object to the demurrer below. We disagree.

Dominican is correct generally that a party who fails to oppose a motion in the trial court effectively waives appellate review. (See *Bell v. American Title Ins. Co.* (1991) 226 Cal.App.3d 1589, 1602.) Nonetheless, " '[a] trial court's order sustaining a demurrer without leave to amend is reviewable for abuse of discretion "even though no request to amend [the] pleading was made." (Code Civ. Proc. § 472c, subd. (a).)' " (*Mercury Ins. Co. v. Pearson* (2008) 169 Cal.App.4th 1064, 1072.) Further, " '[w]hile it is the plaintiff's burden to show "that the trial court abused its discretion" and "show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading" [citation], a plaintiff can make "such a showing . . . for the first time to the reviewing court." ' " (*Ibid.*, citing *Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 667-668.) The fact that Demma failed to oppose the demurrer is therefore not dispositive of the appeal, as he may

6

still make a showing of how amendments would cure defects in his complaint.[4] We will therefore review his appeal on the merits.

## II. *Demma's First Cause of Action for Negligence is Barred by the Statute of Limitations*

Code of Civil Procedure section 340.5 states: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person." The statute defines "health care provider" to include "any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code; and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section

---

[4] In his reply brief, Demma states that a hearing on his complaint was initially set for May 29, 2012. Demma claims that somehow, without his knowledge, the date of the hearing was changed to April 20, 2012, which is why he never opposed the demurrer. A copy of the demurrer, which was served on Demma by mail on March 6, 2012, indicates that the demurrer was set to be heard on April 16, 2012. There is no indication that the date of the hearing was ever changed, or that it was ever set for May 29, 2012. The hearing in fact took place on April 16, 2012, and the trial court sustained the demurrer the same day.

7

1200) of the Health and Safety Code."[5] (Code Civ. Proc., § 340.5, subd. (2).) The section also defines "professional negligence" as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury . . . , provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (*Ibid.*)

Relying on Code of Civil Procedure section 340.5, Dominican argues that the one year statute of limitations on Demma's claims for general negligence had expired when Demma filed his lawsuit on January 31, 2012, based on injuries alleged to have occurred in August, October, and December 2010. Demma argues that the statute of limitations set forth in that section is inapplicable because he alleged a cause of action for *general* negligence, not *professional* negligence, and that accordingly the correct statute of limitations is found in Code of Civil Procedure section 335.1. Code of Civil Procedure section 335.1 provides a two-year limitations period for battery, assault, injury, or wrongful death due to a defendant's wrongful act or negligence.

Whether Demma's first cause of action for negligence is time-barred hinges on whether his complaint alleged professional versus general negligence. Our Supreme Court has held that general negligence and professional negligence are not separate causes of action, and that there is only one standard of care for any given set of facts. (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 998.) "Since the standard of care remains constant in terms of 'ordinary prudence,' it is clear

---

[5] In his opening brief, Demma asserts his belief that Dominican Hospital is unlicensed based on his contact with a state licensing entity. By its terms, Code of Civil Procedure section 340.5 applies only to professional negligence rendered by a licensed health care provider. This argument references factual matters outside the appellate record which we do not consider on appeal. (See Cal. Rules of Court, rule 8.204(a)(2)(C); *Lona v. Citibank*, *N.A.* (2011) 202 Cal.App.4th 89, 102.)

8

that denominating a cause of action as one for 'professional negligence' does not transmute its underlying character. For substantive purposes, it merely serves to establish the basis by which 'ordinary prudence' will be calculated and the defendant's conduct evaluated. Nor does it distinguish a claim separate and independent from some other form of negligence. As to any given defendant, only one standard of care obtains under a particular set of facts, even if the plaintiff attempts to articulate multiple or alternate theories of liability." (*Ibid.*)

Demma's first cause of action alleges professional negligence, regardless of how it may have been labeled in the complaint. In that cause of action, Demma alleges that Dominican breached its duty of care as a mental health facility by allowing his symptoms to escalate and by failing to prevent him from battering fellow patients and a security guard during the three separate incidents described in the complaint.

Although Demma asserts that no professional negligence can be alleged because he explicitly excluded physicians from his complaint, this argument misconstrues the law. The mere absence of a licensed physician among the defendants does not preclude a claim of professional negligence. Professional negligence involves a breach of a duty when rendering a *professional service*, such as medical care, and does not require that a defendant be a licensed professional. (See, e.g., *Bellamy v. Appellate Department* (1996) 50 Cal.App.4th 797, 808-809 [finding professional negligence when hospital staff either failed to set a brake on rolling X-ray table or failed to hold the table in place].)

Courts have consistently upheld a broad interpretation of what constitutes "professional negligence," such that it encompasses not only the actions of a highly skilled physician, but also the acts of staff members employed by licensed healthcare providers, so long as the act of negligence occurred in the rendering of healthcare services for which the provider is licensed. (*Palmer v. Superior Court* (2002) 103 Cal.App.4th 953, 957 [professional negligence found in negligent recommendation made

9

by company during a utilization review to determine if procedure was medically necessary for a patient]; *Bell v. Sharp Cabrillo Hospital* (1989) 212 Cal.App.3d 1034, 1051-1052 [professional negligence found when hospital failed to adequately screen competency of medical staff]; *Canister v. Emergency Ambulance Service* (2008) 160 Cal.App.4th 388, 406-407 [professional negligence found in negligent driving of an ambulance by an emergency medical technician].)

Accordingly, as a licensed psychiatric hospital, Dominican's failure to intervene when Demma had outbursts of violence toward fellow patients and a security guard, and its failure to ensure that Demma's symptoms were properly in check, were all omissions in the provision of professional psychiatric services. Omissions committed by hospital staff in rendering professional services arise out of professional negligence and are accordingly subject to the statute of limitations provided in Code of Civil Procedure section 340.5.

A related issue is when the one-year limitations period commenced. The complaint alleged that Demma was injured due to Dominican's negligence on December 17, 2010, when he was arrested for striking a security guard and taken to county jail, where he was placed in a position of "grave danger." However, according to Demma's complaint, he also suffered harm from Dominican's negligence when the other incidents of battery occurred in August 2010 and October 2010. Accordingly, all of his injuries appear to have occurred in 2010.

The complaint is thus untimely, as Demma filed his complaint on January 31, 2012, beyond the applicable one-year statute of limitations. Nowhere in the complaint does he allege any fraud or intentional concealment, which would toll the statute. (Code Civ. Proc., § 340.5.) Further, Demma does not identify any amendment that would cure the defect, which is his burden. (*Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th 1074, 1081.)

10

We therefore find no error in the trial court's order sustaining the demurrer without leave to amend as to the negligence cause of action.

### III. Demma's Causes of Action for "Intentional Torts" Fail to State a Claim

We now turn to Demma's causes of action for "intentional torts." Dominican argues that the complaint fails to state a claim with regard to both of the intentional torts alleged. For the reasons set forth below, we find that Demma has failed to state facts sufficient to sustain a cause of action for either of the intentional torts identified.

*The March 2010 Intentional Tort*

The first intentional tort alleged by Demma arose in connection with a 2010 battery at the hospital, (one of the incidents alleged to support his negligence claim). Demma stated in his complaint that after he struck an individual at the hospital, he was charged with misdemeanor battery and was cited to appear in court. Shortly thereafter, a hospital social worker informed him and his mother that the charges had been dropped. Demma, believing that the charges were no longer pending, did not attend the scheduled court date, and he was later arrested in March 2011 for failing to appear and spent six days in jail. In connection with that criminal matter, Demma was referred to Atascadero State Hospital for two months for restoration of trial competency. Demma alleged that he lost disability income during that two-month period.

Even assuming the truth of all material facts alleged by Demma, we do not see how these facts constitute an intentional tort cause of action.

Inasmuch as Demma sought to make a claim of fraud, the complaint would fail for lack of sufficient particularity and specificity required of a fraud cause of action. (See, e.g., *Cooper v. Equity Gen. Insurance* (1990) 219 Cal.App.3d 1252, 1262.) To state a viable claim of intentional misrepresentation, Demma must have pled facts to show: (1) there was a false representation as to a material fact, (2) Dominican knew of the falsity, (3) Dominican intended to deceive him, (4) Demma justifiably relied on the

11

misrepresentation, and (5) there were damages. (See Civ. Code, § 1710, subd. 1; *Gonsalves v. Hodgson* (1951) 38 Cal.2d 91, 100-101.) Demma failed to plead facts satisfying all of those elements, as he does not allege that the hospital social worker deliberately and knowingly intended to deceive him about the court date.

Demma also failed sufficiently to plead a cause of action for fraudulent concealment. (Civ. Code, § 1710, subd. 3.) Fraudulent concealment occurs when a fact is suppressed by someone who has a duty to disclose it. Demma never alleged in his complaint that Dominican possessed a duty to inform him of his court date, and we cannot see how such a duty can be imputed to a hospital.

*The August 2011 Intentional Tort*

The second intentional tort was alleged to have occurred sometime in August 2011. Demma alleged that Dominican slandered him to other medical institutions and as a result, those institutions refused to admit him. Demma further accused Dominican of deliberately denying him admission to its Behavioral Health Unit and of denying him an evaluation by a psychiatrist when he was in the emergency room.

Slander is an oral, intentional publication of a false fact that causes injury or damage. (Civ. Code, § 46; *Raghavan v. Boeing Co.* (2005) 133 Cal.App.4th 1130.) By the very nature of a claim of slander, the published fact that causes injury must be false. Demma's claim of slander must therefore fail, as he asserted that Dominican slandered him by telling other institutions of his past incidents of violence at the hospital. Even if Dominican did publish those statements to other mental health institutions, the publication was not of a false fact, but the truth. Demma himself plainly stated in his complaint that he battered fellow patients and a security guard.

As for Demma's additional claim that Dominican refused him admission to the Behavioral Health Unit and an evaluation by a psychiatrist after he was brought in on a Welfare and Institutions Code section 5150 mental health hold, we find that he has not

12

sufficiently stated a cause of action. Demma argues that Dominican violated Welfare and Institutions Code section 5150.1, which provides that "[n]o peace officer seeking to transport, or having transported, a person to a designated facility for assessment under Section 5150, shall be instructed by mental health personnel to take the person to, or keep the person at, a jail solely because of the unavailability of an acute bed, nor shall the peace officer be forbidden to transport the person directly to the designated facility. No mental health employee from any county, state, city, or any private agency providing Short-Doyle psychiatric emergency services shall interfere with a peace officer performing duties under Section 5150 by preventing the peace officer from entering a designated facility with the person to be assessed, nor shall any employee of such an agency require the peace officer to remove the person without assessment as a condition of allowing the peace officer to depart."

Neither Dominican's refusal to admit Demma to its Behavioral Health Unit nor his transportation to county jail describes a violation of Welfare and Institutions Code section 5150.1 or section 5150. Welfare and Institutions Code section 5150.1 addresses the procedure a peace officer must take when transporting an individual to a facility. The statute specifies that the facility may not instruct the peace officer to take the individual to county jail solely because of a lack of beds, and that the peace officer may not be forbidden to take the individual directly to the facility or be prevented from taking the individual to the facility.

Contrary to Demma's complaint, the notes of Dr. Andrew Nevitt, the emergency room doctor who evaluated Demma, indicate that hospital staff did not prohibit deputies from bringing Demma into the facility.[6] When reviewing a demurrer, the "allegations [of a complaint] must be accepted as true," however, the "facts appearing in exhibits attached

_____

[6] The emergency room physician's notes of Demma's visit in August 2011 were attached as exhibit H to the complaint.

13

to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence." (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1626-1627.) According to Dr. Nevitt's notes, Demma was held in his own room in the emergency department of the hospital in four-point restraints due to his risk of violence. Dr. Nevitt indicated that he had a conversation with another physician, who informed him that the hospital was considering having Demma transported to jail for evaluation because no other facility would accept him due to his violent history. Dr. Nevitt prescribed medication for Demma, and a sheriff's deputy later arrived to take Demma to jail. Dr. Nevitt informed the psychiatrist on duty at Dominican's mental health unit about the deputy's plan to take Demma to jail, and the psychiatrist accepted responsibility for Demma's overall psychiatric condition and advised Dr. Nevitt that Demma would be "adequately evaluated in the jail."

Inasmuch as Demma claims Dominican committed a tort by refusing to admit him, the Welfare and Institutions Code makes clear that a facility need not admit all individuals placed under Welfare and Institutions Code section 5150 holds. Welfare and Institutions Code section 5150.3 reads, "[w]henever any person presented for evaluation at a facility designated under Section 5150 is found to be in need of mental health services, *but is not admitted* to the facility, all available alternative services provided for pursuant to Section 5151 shall be offered as determined by the county mental health director." (Italics added.) Further, Welfare and Institutions Code section 5150.1 prohibits health facilities from refusing to admit patients solely because of a lack of beds. Here, it is clear from Demma's complaint that Dominican's reluctance to admit him arose from previous incidents of violence at the facility.

Accordingly, Demma failed to state a cause of action for intentional tort with regard to this second incident. Judging from the relatively confusing narrative of the complaint, it is unclear whether Demma could amend his complaint to allege a cause of

action for either of the two intentional tort claims.  However, the burden rests with Demma to prove that an amendment would cure the defects identified.  (*Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th 1074, 1081.)  Demma fails to suggest any such amendment.  His argument on appeal is simply that the original complaint is sufficient to state a cause of action.  That is simply not the case here.

We therefore find that Demma failed to state a cause of action with regard to either of the two alleged "intentional torts," and further failed to show that amendments would cure the defects in his complaint.  Since we also find that Demma's claim of professional negligence is barred by the statute of limitations set forth in Code of Civil Procedure section 340.5, the issue of whether Demma was allowed to seek punitive damages without prior approval from the trial court is moot.

## DISPOSITION

We find no abuse of discretion by the trial court in sustaining Dominican's demurrer without leave to amend.  The judgment of dismissal is affirmed.  Each party shall bear its own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


Grover, J.


**WE CONCUR:**


Premo, Acting P.J.


Bamattre-Manoukian, J.


15